Raymond Daikeler and Bert C. Daikeler, trading and doing business as Daikeler Associates *v.* Zoning Board of Adjustment of Montgomery Township, Montgomery County, Pennsylvania.

Argued October 6, 1970, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER, and BARBIERI (who has since been appointed to the Supreme Court of Pennsylvania and did not participate in the decision).

*Edward J. Hardiman,* with him *Pearlstine, Salkin, Hardiman, Robinson, Hunn & Meinzer,* for appellant.

*John P. Knox,* with him *Curtis Wright,* and *Stefan Timoney, Knox & Avrigian,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., March 19, 1971:

This Court by virtue of the Appellate Jurisdiction Act of 1970 has before it an appeal from the Court of Common Pleas of Montgomery County which sustained the Montgomery Township Board of Adjustment.

The contention advanced by appellants is that an ordinance which purports to regulate the use of off-premises advertising signs in a township but does in fact arbitrarily and unreasonably prohibit the use is therefore unconstitutional. We agree.

Appellants, a partnership doing business as Daikeler Associates, operate a service station and automotive center (repair shop) on a highway in a limited industrial district in the Township. Daikeler was given a permit to erect two off-site "directional" signs, the first of which reads: "Esso ½ mile Last Esso on Right Before 309 Expressway"; the second: "Esso 1076 feet Last Esso on Right Before 309 Expressway". After they had been erected, Daikeler was notified by the Township that it was in violation of Section 903 of the Ordinance and ordered their removal. An appeal to the Zoning Board of Adjustment alleging the unconstitutionality of the Ordinance, Article 9, Sections 900-904, followed by a hearing, resulted in an order sustaining the Township. This was affirmed by the court below.

Article 9, Section 903, regulating the use of signs in limited industrial districts, permits the following signs and no others, reading: "A. Any permitted sign, provided that the use to which it refers is permitted in the District and is on the same premises therewith. B. Directory signs listing the names of industries within the District, . . . C. Signs advertising the sale or rental of real estate on which they are located, . . . D. Signs in connection with a laboratory, for advertising of business conducted, products sold or manufactured on the premises, . . .". *Neither Section 903 nor Sections 900, 902 or 904 which regulate the use of signs in the other zoning districts permit the use of off-premises advertising signs.*

We agree with Judge DITTER that related to the issue herein resolved is Article 8 of the same ordinance which while specifying the only permitted uses within the "Limited Industrial" district excludes advertising signs as a permitted use in that district. Also related to the issue are Articles 4 through 7 of the ordinance which exclude advertising signs from the permitted uses in *all* other districts. These articles in the absence of Article 9, when taken together create a township-wide sign prohibition.

The authority of a township to establish township-wide use prohibitions is not in dispute, *Exton Quarries, Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 56, 228 A. 2d 169 (1967). But that authority must be limited so that it does not infringe upon the Constitutional rights of its citizens.

Recognizing the danger, our Supreme Court sixty-five years ago, struck down an ordinance of the City of Chester specifically prohibiting all signs within that City. "(The City) had no power to enact an ordinance, common to a whole city and without regard to particular conditions existing in designated or zoned districts,

forbidding citizens to erect billboards on their own property . . .", *Liggett's Petition,* 291 Pa. 109, 116, 139 A. 619 (1927), discussing *Bryan v. City of Chester,* 212 Pa. 259, 61 Atl. 894 (1905). Recently, although recognizing the trends to liberalize or broaden the scope of a municipality's power in zoning affairs, the Supreme Court held a "blanket prohibition" to be too general, broad and unreasonable. In *Norate Corp. v. Zoning Bd. of Adjustment,* 417 Pa. 397, 207 A. 2d 890 (1965), where a sign ordinance prohibited all off-site advertising "anywhere in the township", the Court held the regulation to be "patently unreasonable and invalid" because it attempted to regulate "without any regard for the districts set up under the Zoning Ordinance," 417 Pa. at 407; see also, *Ammon R. Smith Auto Co. Appeal,* 423 Pa. 493, 233 A. 2d 683 (1966), which held an ordinance to be unconstitutional where it prohibited all flashing signs in the municipality.

*Bryan* and *Norate* both have held that in passing an ordinance which would call for total prohibition, a municipality must take into consideration the "conditions existing in the designated or zoned districts" or it cannot survive the challenge of unconstitutionality. The Zoning Board of Adjustment and the court below must determine whether the municipality did so. This Court in determining the error of the court below looks to the municipality to satisfy it that such consideration was given.

Appellees argue that since a township can prohibit signs in one zoning district, *Silver v. Zoning Board of Adjustment,* 381 Pa. 41, 112 A. 2d 84 (1955) ; *Landau Advertising Co. v. Zoning Board of Adjustment,* 387 Pa. 552, 128 A. 2d 559 (1957), that a township could prohibit on a zone-by-zone method that same use in all other zoning districts.

This contention must fall for two reasons: First, neither *Silver* nor *Landau* lends itself to the extension

suggested by appellee. In *Silver* and *Landau*, the issue involved the validity of a prohibition in one district only. Since the court distinguished individual district prohibition from municipality-wide prohibition at issue in *Bryan*, municipality-wide prohibitions are not sanctioned by *Silver* and *Landau*.

To construe otherwise would negate *Norate*. There the Court held blanket prohibition "patently unreasonable". *Norate* in considering the justifications which countenance advertising sign prohibitions in single districts,[1] found that they could not sustain a municipality-wide prohibition.

Appellees suggest that municipality-wide prohibition would follow township creeping zoning prohibitions. To permit total prohibition based on justifications which *Norate* found unacceptable, would leave *Norate* devoid of any legal significance. In short, we would allow indirectly a result which *Norate* directly decries.

---

[1] "Ordinances dealing with the regulation of signs, billboards and other outdoor advertising media have been held on many occasions, within the police power of a municipality. Specifically, billboard ordinances and regulations, where reasonable, are justified under the police power for any or all of the following reasons: (1) billboards being temporary structures are liable to be blown down and thus injure pedestrians; (2) they gather refuse and paper which may tend to spread conflagrations; (3) they are used as dumping places for dirt, filth and refuse, and as public privies; (4) they serve as hiding places for criminals; and they are put to use by disorderly persons for immoral purposes. Moreover, as is well known, billboards placed at certain locations, as at corners or curves, may obstruct the vision of drivers and thereby constitute a traffic menace, and the promotion of safety on public highways certainly is justification for a billboard regulation reasonably related thereto. 7 *McQuillin, Municipal Corporations* (3rd ed.), pp. 310, 311 [sic] pp. 326, 327, and cases cited therein." *Norate Corp. v. Zoning Board of Adj.*, 417 Pa. 397, 404-05 (1965). This passage of *McQuillin* is cited by the Court in *Landau*, 387 Pa. at 556.

In considering the effect of total prohibition, deeper perception is required than the ordinary scrutiny to which specific areas or sectors are subjected. "The municipal power for zoning purposes absolutely to forbid a use in a particular district ordinarily presupposes the allowance or permission of that use in another district, and the complete exclusion or prohibition of any use not inherently obnoxious must be regarded as of doubtful validity." McQuillin, *8 Municipal Corporations*, 321, §25.1196 (1965).

Proper governmental regulation calls for a distinction in types of uses as noted in *Norate* at page 406 where billboards might be considered a likely breeding ground for nuisance as compared with other forms of advertising. It cannot be said that all advertising signs *per se* are so inherently obnoxious as to permit the withholding of constitutional protection. *Exton Quarries, Inc. v. Zoning Board of Adjustment*, 425 Pa. 43, 228 A. 2d 169 (1967); *Girsh Appeal*, 437 Pa. 237, 263 A. 2d 395 (1970).

*Exton* clearly and unmistakably declares that in-depth consideration of the attendant factors must be given to total use prohibition. There the ordinance provided, *inter alia*, that quarries were "specifically prohibited in any District of West Whiteland Township". Notwithstanding the presumption that statutes are valid, "the constitutionality of zoning ordinances which totally prohibit legitimate businesses . . . from an entire community should be regarded with particular circumspection; for unlike the constitutionality of most restrictions on property rights imposed by other ordinances, the constitutionality of total prohibitions of legitimate businesses cannot be premised on the fundamental reasonableness of allocating to each type of activity a particular location in the community." 425 Pa. at 59. "A zoning ordinance which totally excludes a

particular business from an entire municipality must bear a more substantial relationship to the public health, safety, morals and general welfare than an ordinance which merely confines that business to a certain area in the municipality." 425 Pa. at 60.

The thrust of *Exton* is not the enunciation of the proposition that a more substantial relationship must exist where the prohibition is total. *Norate* said as much. However, the crux of *Exton* is its method of determining the substantiality of the relationship. It was here where the court below erred.

There is a presumption of validity as to zoning ordinances which puts upon the challenger a heavy burden to show that the statute is arbitrary, unreasonable or unnecessary. This presumption moves on to add a further presumption, i.e., that there are valid bases to justify the regulation. Accordingly, there usually exists two presumptions in favor of the ordinance: (1) That the regulation is justified by valid premises; and (2) that the regulation is reasonable and evenhanded in its scope.

The challenged ordinance enjoyed neither presumption in *Exton*. The Zoning Board was put on the defensive and was required to justify its prohibition. See *Beaver Gasoline Co., et al. v. Zoning Hearing Board of the Borough of Osborne and the Borough of Osborne,* 1 Comm. Ct. 458 (1970). Reaching out to meet its burden, it sought to show undesirable effects of such a use. They were then carefully examined to discern whether each specific undesirable effect either could be eliminated by thoughtful regulation (making prohibition unreasonable) or would be caused by other permitted uses (showing arbitrary application of the Board's power). If the municipality cannot withstand the severe scrutiny of its rationale then the prohibition cannot stand. See also *Girsh Appeal, supra* at p. 243,

in which the reasons advanced by a township for the exclusion of apartments are examined. So that ordinances which "totally exclude a particular business for an entire municipality" must "bear a more substantial relationship" to the municipal power of prohibition or regulations, lesser demands are made of an ordinance which do not threaten injury inherent in total prohibition.

We hold that the rationale of *Exton* applies here. *Exton* addressed itself to the prohibition of any "legitimate business" and advertising is legitimate and is a business, barring evidence to the contrary. See *Norate, supra* at p. 406. The broad encompassing language of the Supreme Court permits no other conclusion.

In reviewing the record, we find that the Zoning Board offered no justifiable bases for the prohibition. To the contrary, it erroneously alleges that this burden was upon the applicant. This Court cannot on its own manufacture legislative purpose for the ordinance. Nor can we speculate on the quality of a record of legislative purpose which has never been produced. The Board has not demonstrated the substantial relationship required to sustain the prohibition. We find it to be unreasonable and invalid.

The court below understandably was mislead by the factual situation and, applying it to *Exton,* fell into error. In addressing itself to the nature of the business, it found that "all off premises advertising signs" were prohibited but "directional" signs were permitted thus removing the blanket prohibition of advertising uses. However, notwithstanding the fact that the Zoning Officer issued a permit for "directional" signs,[2] there is no provision in the ordinance for such a classi-

---

[2] Assuming there had been a class "directional" signs, the wording of signs is not a legitimate distinction upon which to permit some signs and prohibit others. *Landau,* 387 Pa. at 563-64.

fication. Section 903 permits the use of "Directory" signs listing "the names of industries within a District." The latter cannot be considered advertising within the generally accepted use of the term. This leaves us with a blanket prohibition of advertising uses and *Exton* must apply.

The court below appeared to hold elsewhere in the opinion that *Exton* applied and in doing so erroneously considered the normal standards enunciated in *Norate* controlling. In compounding this error, the court below placed upon the shoulders of the applicant (appellant) the duty of overcoming the presumption of statutory validity.

In short, the prohibition of a legitimate business use such as off-site advertising signs, throughout an entire municipality, must bear a more substantial relationship to health, safety and general welfare than partial prohibitions where the business is permitted in another district of that municipality. Where there is a total exclusion, no matter how it is accomplished, the municipality must bring forward sufficient and valid reasons for the prohibition. It must further demonstrate that these reasons cannot be satisfied by thoughtful regulation short of prohibition and that the prohibition does not arbitrarily discriminate against that business. The township here has not met this burden. The Order of the Lower Court is reversed.

———

DISSENTING OPINION BY PRESIDENT JUDGE BOWMAN:

The single issue in this case is the constitutionality of a township-wide prohibition of "off-site" advertising signs. The majority admits that "[t]he authority of a township to establish township-wide use prohibitions is not in dispute . . ." but finds that the prohibition as here enacted does not pass constitutional muster. The majority cannot point to any lack of power in the town-

ship authority to enact such an ordinance, as such power clearly exists. *Exton Quarries, Inc. v. Zoning Board of Adjustment, supra.* Rather, the majority rests its reversal of the court below on the failure of the Zoning Board to bring forth evidence of reasonableness and proper exercise of the power to zone when the questioned ordinance was first challenged on constitutional grounds. In effect, the majority would place the burden of going forward in the first instance not on the attacking party but on the municipality.

I cannot agree with such a doctrine. While the majority opinion does not declare total use prohibitions unconstitutional *per se*, it nonetheless imposes an unfairly heavy burden on the enacting authority to justify its enactments. It is basic zoning law that a zoning board may not act without purpose or authority for " '. . . the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property . . .' ". *Exton* at 58. The majority conclusion, while paying lip service to the well established presumption of validity which attaches to properly enacted zoning ordinances in reality destroys it and creates a new presumption against the municipality of arbitrary action in enacting a total use prohibition which must be rebutted by adequate evidence.

I do not believe that prior Supreme Court pronouncements can or should permit us to reach such a result. In the *Norate* case cited by the majority, an ordinance prohibiting "off-site" advertising signs was declared unconstitutional because it was ". . . too general, too broad and unreasonable". 417 Pa. at 407. The *Exton* case clarified the *Norate* holding by establishing the test which must be passed for a total use prohibition to be declared constitutional. "[W]e believe that a zoning ordinance which totally excludes a particular

business from an entire municipality must bear a more substantial relationship to the public health, safety, morals and general welfare than an ordinance which merely confines that business to a certain area in the municipality" *Exton* at 60. The substance of *Exton* is that a municipality must be more scrupulous in assessing alternative plans, weighing the benefits and burdens, and fitting the remedy to the complaint when it creates a use prohibition than when it merely geographically restricts a use. Nowhere, however, does the *Exton* court disturb the presumption of validity that attaches to validly enacted ordinances. "A challenge to the constitutionality of a zoning ordinance must overcome the presumption of its validity. The burden of doing so, though heavy, is maintainable. . . ." *Exton* at 58.

All the cases cited by the majority in which use prohibitions were struck down involve peculiar factual postures and individually independent reasons for such a determination not here relevant. The *Norate* ordinance was overbroad; the *Exton* prohibition of quarrying was deemed inappropriate because of alternative methods of regulation and the lack of danger to public health and welfare; in *Ammon R. Smith Auto Co. Appeal, supra,* the ordinance prohibited an already lawful nonconforming use; in *Girsh Appeal, supra,* citing *Exton,* multiple family structures were not permitted anywhere in the township and the ordinance was declared unreasonable and exclusionary. Here, we are not faced with an overbroad ordinance, questionable evidence, an existing nonconforming use, or an exclusionary purpose. In fact, the record is remarkably barren of any evidence either in support of the sign prohibition as proper and constitutional or against it as arbitrary, or overbroad. Absent some evidence cutting one way or the other, I can-

not say with the finality which the majority asserts that the ordinance here is unconstitutional.[1]

The majority admits, if only by implication, that it has no conclusive authority for placing the burden of going forward on the township. It argues that because the Zoning Board is better equipped to show the more "substantial relationship" mandated by *Exton*, the Board is logically put on the defensive by a constitutional challenge. I agree that the municipality must, ". . . withstand the severe scrutiny of its rationale . . ." but it must at least know on which front it is being attacked before being required to return fire. The Zon-

---

[1] This case came before the Zoning Board upon an "[a]pplication . . . requesting a variance or special exception to Article IX, Signs, LI Industrial District, Section 903A to maintain two presently erected 'off premises' signs . . . advertising a business on Route 309"; which application was advertised as the subject matter of the hearing conducted by the Board. Early in the hearing when appellant's counsel was asked whether he sought an exception or a variance he declined to be specific and shortly thereafter disclosed— apparently for the first time—that he was attacking the constitutionality of the ordinance as a whole and sought neither an exception nor a variance. The remainder of the record consists of little more than evidence describing the size, makeup, location and circumstances surrounding the erection of the disputed signs and irrelevant evidence of other signs as enjoying lawful nonconforming use status.

For some unexplained reason, the proceedings thereafter are treated as an *appeal* from the action of the Zoning officer in revoking the sign permits previously and unlawfully issued. I am not now necessarily concerned with the propriety of such procedure, and do not here pass upon it. That the Zoning Board believed it was to be concerned with an application for a variance or exception only to be suddenly confronted with a constitutional attack upon the zoning ordinance as a whole demonstrates the unreality and practical illogic of the majority opinion, in this case, casting the presumption of invalidity upon the zoning ordinance in question and demanding that the municipality come forward with evidence to overcome this newly created presumption.

458

ing Board of Montgomery Township should not be put at peril by an unsupported constitutional attack.

In this case we have none of the compelling reasons such as economic hardship or geographic suitability found in *Exton* or the logic that "[a]partment living is a fact of life that communities . . . must learn to accept". *Girsh* at 246. I cannot subscribe to the extreme position of a declaration of unconstitutionality absent some showing of similarly compelling reasons to overturn presumed validity. I therefore dissent.