## Lower Providence Township and Wood v. Ford.
## Wood v. Ford.

Argued April 14, 1971, before President Judge Bow-
man and Judges Crumlish, Jr., Kramer, Wilkinson,
Jr., Manderino, Mencer and Rogers.

*Robert C. Fernandez,* with him *Joseph J. McGrory* and *McGrory, Scirica, Wentz & Fernandez,* for appellant Zoning Hearing Board.

*Walter Phipps, Jr.,* for intervenor and appellant, Wood.

*J. Pierce Anderson,* with him *Bean, DeAngelis, Kaufman & Giangiulio,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., November 5, 1971:

These are appeals from an order of the Court of Common Pleas of Montgomery County which directed Lower Providence Township to issue permits for the construction of appellee's trucking terminal. The Township's Zoning Hearing Board had refused to grant the requested use. With some modification, we affirm the order of the court below.

Appellee, president of De-Pen Lines, Inc., a trucking company in Montgomery County, is seeking to construct a trucking terminal in an "I-Industrial" zone of Lower Providence Township. The township zoning ordinance permits only "commonly known industrial manufacturing pursuits when approved by the Zoning Board of Adjustment," in "I-Industrial" districts. Appellee, therefore, requested approval of his proposed terminal but the Board of Adjustment (now the Zoning Hearing Board), after hearing testimony, denied the application on the grounds that a "trucking terminal" is not a manufacturing company and is not commonly known as an "Industrial Manufacturing Pursuit." In somewhat an alternative stance, the Board further held that the requested use, in "performing all [the] neces-

sary operations" of trucking, would be "detrimental to the health, safety and welfare of the adjoining property owners" and would not comply with the provisions of the Township zoning ordinance for industrial uses.

On appeal to the Court of Common Pleas of Montgomery County, a three judge panel, without additional evidence, unanimously reversed the Board and directed issuance of the necessary permits. Both the Township and an intervening protestant have brought appeals before us.

"Where, as in this case, the Court below took no additional testimony, our review is limited to the narrow issue of whether the *Board* committed a manifest abuse of discretion or an error of law. Village 2 at New Hope, Inc. Appeals, 429 Pa. 626, 241 A. 2d 81 (1968); Di Santo v. Zoning Bd. of Adj., 410 Pa. 331, 189 A. 2d 135 (1963)." *Burgoon v. Zoning Bd. of Adj.*, 2 Pa. Commonwealth Ct. 238, 277 A. 2d 837 (1971).

In *Burgoon,* as in this case, the Township zoning ordinance used overbroad terms to define uses permitted by special exception. As here, the Board in *Burgoon,* then attempted to ascribe a narrow meaning to the broad language in the ordinance. This Court stated then and herein reaffirms that "these terms must be given their broadest meanings. Any restriction on their use must be explicit and strictly construed. Rolling Green Golf Club Case, 374 Pa. 450, 97 A. 2d 523 (1953)." 2 Pa. Commonwealth Ct. at 245.

For the Board to conclude that a trucking terminal is not a common "Industrial Manufacturing Pursuit" it must have found that the above phrase in its *broadest* meaning does not include trucking. This Court seriously doubts whether the narrowest meaning of this phrase would preclude trucking. In any event, the finding of the Board upon the record before us clearly

demonstrates that the refusal to include trucking as an "Industrial Manufacturing Pursuit" was a manifest abuse of discretion which infringed upon appellee's constitutional rights.

"When the term [Industrial Manufacturing Pursuit] defines uses which are permitted, it is both permissive and restrictive. Without further limiting definition, the permissive nature of the phrase must be taken in its *'broadest sense'*. Gilden [Appeal, 406 Pa. 484, 178 A. 2d 562 (1962)]. On the other hand, any restrictive nature ascribed to the phrase must be taken in its strictest sense. Rolling Green, supra. This accords the landowner the benefit of the least restricted use and enjoyment of his land." *Burgoon,* 2 Pa. Commonwealth Ct. at 248.

Alternatively, the Board held that the normal activity of the trucking terminal would be detrimental to the health, safety and welfare of the neighboring property owners. This finding is legally insufficient to support the refusal of the special exception. The impact from a permitted use which will justify the denial of a special exception for that use must be greater than the impact which normally results from the use. *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A. 2d 587 (1957). *See also, Valley Forge Industries, Inc. Appeal,* 406 Pa. 387, 177 A. 2d 450 (1962); *Sibarco v. Zoning Bd. of Adj.,* 15 Ches. Co. Rep. 204 (1967). "Accordingly, if a zoning ordinance is drawn rationally, a decision to permit a use by special exception reflects at the least a legislative judgment that the degree of impact which *necessarily* flows from the use does not materially affect the public interest, and will not justify a denial of the use. The most common error of protestants and of the zoning boards in special exception cases is the failure to recognize that the existence of the special exception itself represents a legislative

determination that the degree of impact is permissible." *Ryan, Pennsylvania Zoning,* §5.2.6 (1970). It was an error of law for the Board to hold that the normal incidents of a trucking terminal were impermissible.[1]

The final conclusion of the Board was that the use would not be permitted within the provisions of the zoning ordinance. The court below interpreted this conclusion to mean that the use was not permitted for reason of noxious or offensive effects or for reason of unmuffled use of internal combustion engines. Section 702 of the Township ordinance prohibits such use. The court below therefore passed upon the constitutionality of these prohibitions, finding them fatally vague and unreasonable. We find no need to pass upon this issue.[2]

The decision of the Board does not specify which provisions of the ordinance the Board found prohibited the requested use. As this Court has stated on numerous occasions, it does not intend to engage in guessing

---

[1] Appellants urge upon us the case of *Valley Forge Industries, Inc. Appeal,* 406 Pa. 387, 177 A. 2d 450 (1962) which upheld the refusal to permit a truck storage yard in a commercial zone as a special exception because of its effects on the neighborhood. In *Valley Forge,* the effects on the neighborhood were essentially the result of "improper design" associated with that particular requested use. We find the *Valley Forge* case consistent with the policy enunciated in *Archbishop O'Hara,* and therefore not controlling in this case.

[2] We must note in passing that where the prohibitions found in Section 702 result in the total exclusion of that use from the entire township, the reasons for prohibiting that use must not only conform to the tests used by the court below, but must also comply with *Exton Quarries, Inc. v. Zoning Bd. of Adj.,* 425 Pa. 43, 228 A. 2d 169 (1967). *See also, Beaver Gasoline Co. v. Zoning Hearing Bd.,* 1 Pa. Commonwealth Ct. 458, 275 A. 2d 702 (1971); *Daikeler v. Zoning Bd. of Adj.,* 1 Pa. Commonwealth Ct. 445, 275 A. 2d 696 (1971).

games with the quasi-judicial bodies of the Commonwealth. *Rees v. Zoning Hearing Bd.,* 2 Pa. Commonwealth Ct. 551, 279 A. 2d 354 (1971) ; *Pantry Quik, Inc. v. Zoning Bd. of Adj.,* 1 Pa. Commonwealth Ct. 326, 274 A. 2d 571 (1971). See *Appeal of Mine,* 30 Beaver 153 (1970) ; *see also, Humble Oil and Refining Co. v. East Lansdowne Borough,* 424 Pa. 309, 227 A. 2d 664 (1967). The Board has failed to present us with enumerated findings of fact and has presented an incomplete conclusion that the use is prohibited by the ordinance. Without proper foundation we can only hold this assertion insufficient to sustain the Board's denial of the permits.

The Board, by virtue of Section 1101 of the zoning ordinance, has the power to impose appropriate conditions and safeguards when granting special exceptions. The Board should have that opportunity in the present case. However, we will not countenance the imposition of conditions which would limit the normal function of appellee's terminal. We remand only for the consideration of such conditions as will buffer the residential neighbors from the industrial zone.

### ORDER

AND NOW, this 5th day of November 1971, this matter is remanded to the Court of Common Pleas of Montgomery County with the direction to return the record to the Zoning Hearing Board of Lower Providence Township for consideration of the imposition of conditions consistent with this opinion; after final determination of the imposition of such conditions the appropriate official of the Township is directed to issue the requisite permits to the appellee for his proposed construction and use of the subject premises, subject to the requisite fees being paid in full compliance with all other lawful ordinances of the Township.

Judge MANDERINO concurs in result only.

CONCURRING OPINION BY JUDGE ROGERS:

The Zoning Hearing Board of Lower Providence Township concluded that a trucking terminal is not an Industrial Manufacturing Pursuit and that even if it were the appellee should not be granted the required special exception because its operation would be detrimental to health, safety and welfare. The court below reversed the Board chiefly because in its opinion the pertinent provisions of the ordinance were unconstitutionally vague. The majority here properly ignores the lower court's conclusion that the ordinance was invalid and bases their affirmance of the order below on the conclusions that a trucking terminal was a permitted use and that there was no evidence of an effect on health, safety or welfare greater than might be expected of a trucking terminal. I concur in the judgment because the appellants have conceded that the proposed trucking terminal is an Industrial Manufacturing Pursuit, thus withdrawing this issue from our consideration, and because I agree that the evidence does not support the Board's finding that the new use would affect health, safety and welfare more detrimentally than might be expected of a trucking terminal.

I cannot, however, agree with the rule of construction here repeated that the provisions of zoning ordinances permitting uses are to be taken in their broadest sense but those restricting uses must be strictly construed. I believe that this rule, if ever supportable, has no present warrant, however convenient it may be in the decision of close cases.

It is unquestionable that the rules of the Statutory Construction Act, Act of 1937, May 28, P. L. 1019, 46 P.S. 501, are applicable to municipal ordinances, even though that Act defines a law as an Act of Assembly. In *Cloverleaf Trailer Sales Company v. Pleasant Hills Borough*, 366 Pa. 116, 121, 76 A. 2d 872 (1951), Mr.

Justice CHIDSEY, prefatory to employing the Statutory Construction Act in the interpretation of an ordinance, wrote: "A municipal ordinance is in reality a statute and rules of construction applicable to the latter are to be applied with equal force and effect."

The principles of the Statutory Construction Act have consistently been used in the construction of zoning ordinance. See for example at the appellate level: *Marple Township v. Lyman et al.,* 151 Pa. Superior Ct. 288, 30 A. 2d 208 (1943); *Bonasi v. Board of Adjustment,* 408 Pa. 260, 182 A. 2d 692 (1962). If any of the Act is to be applied, *all* of it should. Section 558, 46 P.S. 558 provides that: "The rule that laws in derogation of the common law are to be strictly construed, shall have no application to the laws of the Commonwealth hereinafter enacted." The same section then provides exceptions to this rule, none of which relate to the regulation of land use. The section concludes with the requirement that: "All other provisions of a law shall be liberally construed to effect their objects and to promote justice."

Our researches indicate that the most popular, possibly because it is the most simplistic, rationale of the rule of strict construction was first expressed in *Lord Appeal,* 368 Pa. 121, 126, 81 A. 2d 533, 535 (1951), as: "Restrictions imposed by zoning ordinances are, however, in derogation of the common law[1] . . . and

---

[1] Restrictions are, however, no new concept in this country. Thomas Jefferson, while Secretary of State, aided in devising and possibly drafted a series of stringent restrictions for application to lots in the City of Washington, to be sold by the Commissioners of the Federal District. Some of these restrictions were suggested by President Washington, an experienced real estate investor. Jefferson had been an active and successful lawyer. While the distinction between deed restrictions and municipal regulation is recognized, Jefferson's notes and correspondence reveal no reluctance to impose conditions drastically restricting land use. *Thomas Jeffer-*

therefore must be strictly construed. Lukens v. Zoning Board of Adjustment, 367 Pa. 608, 80 A. 2d 765, Kline v. Harrisburg, 362 Pa. 438, 451, 68 A. 2d 182." But neither *Lukens* nor *Kline v. Harrisburg* seem to speak to the issue of construction. *Lukens* merely notes that parts of zoning ordinances may be confiscatory and *Kline v. Harrisburg* says that zoning ordinances which deprive an owner of substantial rights are of serious consequence and should be exercised only in the manner designated by the Legislature. The authorities for the *Lukens* and *Kline v. Harrisburg* principles, such as they are, appear to be *White's Appeal,* 287 Pa. 259, 134 A. 409 (1926) and *Gilfillan's Permit,* 291 Pa. 358, 140 A. 136 (1927) decided a decade before the passage of The Statutory Construction Act and containing only general minatory statements concerning the effect zoning could have upon private rights.

Therefore, it would seem that at least since 1937, zoning ordinances enacted thereafter should have been given a liberal, not strict construction, and that the development *after 1937* of a rule contrary to The Statutory Construction Act, based upon general statements from cases antedating its enactment, was anomalous.

The question here raised was recognized in *Exton Quarries, Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 49, 228 A. 2d 169, 174 (1967) where the court found no conflict between the doctrine of strict construction of zoning ordinances and liberal construction of zoning enabling acts because the Statutory Construction Act defines a law as an Act of Assembly. In *Exton,* however, it was the enabling act not the ordinance which was being construed. We repeat that the Statutory Construction Act has consistently been employed in the

---

*son and The National Capital,* 1783-1818. Edited by Saul K. Padover, United States Government Printing Office, 1946, pp. 67-74; Illustration facing page 445.

construction of zoning ordinances and that that Act suggests a liberal construction. The consequence of the inconsistency here pointed out is exemplified by *Fidler v. Zoning Board of Adjustment,* 408 Pa. 260, 182 A. 2d 692 (1962) where the *Lord* rule of strict construction contradicted by §558 is used as a guide in the construction of one part of the ordinance in question, and §§51 and 52(2) of the Act are employed in the interpretation of others.