DISSENTING OPINION
BY JUDGE,
WOJCIK
I respectfully dissent.
This is not a typical special exception ease. What makes this ’case unique is that Marr Development Mifflinville, LLC (Applicant) filed a single application requesting not one, but 11 special exceptions to build 11 two-family attached dwelling units or duplexes in a district that is zoned for “[s]ingle family detached dwellings” under the Mifflin Township Zoning Ordinance (Ordinance).[1] Section 432.A.3 of the Ordinance (emphasis added). Although the Ordinance permits “single family attached dwellings, limited to two dwelling units” by special exception under Section 432.C.3 of the Ordinance, the intensity of the proposed use conflicts with the compatibility requirements of the Ordinance.
It is an objector’s burden to show that the proposed use will substantially affect the health, safety and welfare of the community “or will conflict with the expressions of general policy contained in the ordinance.” JoJo Oil Co., Inc. v. Dingman Township Zoning Hearing Board, 77 A.3d 679, 688 (Pa. Cmwlth. 2013) (citing Bray v. Zoning Board of Adjustment of City of Philadelphia, 48 Pa.Cmwlth. 523, 410 A.2d 909, 913 (1980)) (objectors have both the duty and burden regarding “general policy concern, e.g., as to harmony with the spirit, intent or purpose of the ordinance”)) (emphasis added). “[T]he impact of a use on the character of the neighborhood is a relevant area of inquiry in a special exception case ....” Robert S. Ryan, Pennsylvania Zoning Laws and Peagtice, at § 5.3.4 (2012 ed.).
Accordingly, if a zoning ordinance is drawn rationally, a decision to permit a use by special exception reflects at the least a legislative judgment that the degree of impact which necessarily flows from the use does not materially affect the public interest, and will not justify a denial of the use. The most common error of protestants and of the zoning boards in special exception cases is the failure to recognize that the existence of the special exception itself represents a legislative determination that the degree of impact is permissible.’
*486 Board of Supervisors of Lower Providence Township v. Ford, 3 Pa.Cmwlth. 380, 283 A.2d 731, 733 (1971) (quoting Ryan, PENNSYLVANIA ZONING, § 5.2.6 (1970 ed.)) (emphasis added). To justify the denial of a special exception, the impact from the proposed use must be greater than the impact that normally results from such use. Id. (citing Archbishop O’Hara’s Appeal, 389 Pa. 35, 131 A.2d 587 (1957)).
The Ordinance is designed to “promote proper density of population.” Section 121 of the Ordinance, The Ordinance allows for “[s]ingle family detached dwelling” as a permitted principal use in the Suburban Residential District (RS District). Section 432.A.3 of the Ordinance. It also allows for a “[s]ingle family attached dwelling, limited to two dwelling units” as a use permitted by special exception. Section 432. C.3 of the Ordinance. However, duplexes and multi-duplex developments, such as the one proposed here, are permitted principal uses in higher density districts, such as the Urban Residential Districts and Neighborhood Commercial Districts. Sections 442.-A.2 and 452.A.2 of the Ordinance.
In addition, the framers of the Ordinance determined that a special exception must be compatible, meaning “in the best interest of properties in the general area as well as the community at large.” Section 1113.B.2 of the Ordinance. “The proposed use will be reviewed as to its relationship to and effect on surrounding land uses ....’’Id.
Here, the Board found that the objectors met their burden of proving the proposed use will conflict with expressions of general policy in the Ordinance because it is incompatible with the surrounding area and community at large. More particularly, the proposed multi-duplex use is not consistent or compatible with the existing and adjoining land uses or the development goals of the RS District. The proposed use is “more intense” than the surrounding area. Board Opinion, at 2.
Indeed, it is the scope of the application and the number of duplexes proposed in this single application that are of concern here. Applicant did not request a special exception to erect one “single family attached dwelling, limited to two dwelling units.” Rather, Applicant requested permission to erect 11 duplexes on one lot, for a total of 22 new dwelling units. The block on which the Property is located contains 17 single-family detached dwelling units. N.T. at 86. The proposed 22-unit complex would more than double the number of dwelling units in just that block and outnumber the 17 single-family detached dwelling units. N.T. at 86. Such an increase in the number of duplexes will significantly alter the character and composition of the surrounding neighborhood from predominantly single detached dwelling units to predominantly duplexes. See Blair v. Board of Adjustment of Borough of Hatboro, 403 Pa. 105, 169 A.2d 49, 50-51 (1961) (holding the “accumulation of five [gasoline] service stations within a radius of 350 feet has a definite effect on the ‘character’ of the immediate neighborhood, ... zoned primarily for retail business.”). Such an immediate alteration in the composition of the community is not in the best interest of the properties in the general area or the community at large.
It is the degree of impact that is at odds with the Ordinance, not the use itself. The proposed scope of the project runs counter to what the drafters contemplated for the RS District and far exceeds the expected impacts normally contemplated for a single-family attached dwelling, limited to two units. See Ford, 283 A.2d at 733. Applicant’s request is akin to using a special exception permitting a single retail store use to justify the construction of a multi-store strip mall. Thus, I believe the Board *487 did not err in determining that objectors met their burden of proving that a multi-duplex development is not consistent with the RS District’s development objectives for single-family detached dwelling units or in the best interests of the surrounding community. For these reasons, I would affirm.

. The Ordinance was enacted January 18, 1973.