IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laura Harding,                              :
                         Appellant          :
                                            :
          v.                                :
                                            :
Harrisburg City Zoning                      :
Hearing Board                               :
                                            :
          v.                                :
                                            :   No. 633 C.D. 2022
Heinly Homes, LLC                           :   Submitted: January 5, 2024

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                         FILED: August 9, 2024


          Laura Harding (Appellant) appeals from the May 23, 2022 order (Trial
Court Order) of the Court of Common Pleas of Dauphin County (Trial Court) that
affirmed the decision of the Harrisburg City Zoning Hearing Board (Board) granting
a use variance to build a parking lot on property owned by Heinly Homes, LLC
(Heinly).  Upon review, we reverse the Trial Court Order.

## I. Background and Procedural Posture

          The facts underlying this matter are straightforward and relatively
simple.  Heinly owns a 0.31-acre property located at 2218 Susquehanna Street in
Harrisburg, Pennsylvania (Property).  *See* Board Decision dated December 14, 2021
(Board Decision) at 4 (pagination supplied).  Susquehanna Street is a 15-foot
alleyway too narrow to permit on-street parking and two-way traffic.  *See* Board

Decision at 4, 8. The Property consists of a vacant lot with an existing impervious floor from a building previously located on the Property. *See id.* at 4. The Property is located within the City of Harrisburg's (City) Residential Medium Density zoning district (RM Zone) and lies within a 100-year floodplain. *See id.* Commercial parking lots are not permitted within the RM Zone. *See* Board Decision at 5; *see also* Section 7-305.7 of the City of Harrisburg, Pa., Zoning Code (2014) (Zoning Code), § 7-305.7.[1]

Heinly applied for a variance on June 2, 2021 (Application), seeking to develop a surface parking lot on the Property. *See* Board Decision at 3. The Board conducted multiple hearings on the Application. *See* Board Decision at 3; *see also* Notes of Testimony, July 19, 2021 (N.T. 7/19/2021); Notes of Testimony, September 20, 2021 (N.T. 9/20/2021); and Notes of Testimony, November 15, 2021 (N.T. 11/15/2021) (collectively, Application Hearing).

At the Application Hearing, William Rothman testified before the Board on Heinly's behalf as an expert in commercial and residential real estate.[2] *See* N.T. 11/15/2021 at 10-61. Rothman testified that he assessed the Property by

---

[1] The permitted uses within the RM Zone include: Dwelling, Attached; Dwelling, Detached; Dwelling, Manufactured Homes; Dwelling, Semi-Detached (special exception use); Supportive Housing-Family; Adult Day Care (special exception use); Bakery, Retail; Child Care Center (special exception use); Coffee Shop/Café (special exception use); Community Center; Crafts or Artisan's Studio; Essential Services; Florist; Funeral Home (special exception use); Library; Medical or Dental Office, Testing Center, or Laboratory; Membership Club; Municipal Owned Uses; Offices; Pawn Shop; Personal Services; Place of Worship; Public Utility Facility; Recreation, Indoor; and Recreation, Outdoor. *See* Section 7-305.7 of the Zoning Code.

[2] Rothman has worked in the real estate industry since 1962 and is an owner of RSR Realtors, a real estate company that he founded in 1970 in Lemoyne, Pennsylvania. *See* N.T. 11/15/2021 at 11-12. Rothman explained that, as a real estate professional, it is his job to assess the economic feasibility of a property's potential use and the corresponding impact on a property's marketability. *See* N.T. 11/15/2021 at 11-12.

analyzing the feasibility of both residential and commercial uses permitted within the RM Zone. *See* N.T. 11/15/2021 at 11-12, 15. Rothman stated that the Property's location within the 100-year floodplain would require the first floor of residential structures built there to be elevated above the level of the floodplain, as living areas in dwellings are not permitted to be within the floodplain. *See* N.T. 11/15/2021 at 16. Rothman testified that this restriction would require a residential structure to be constructed with an additional floor,[3] greatly increasing construction cost and creating a building that was out of character with the rest of the neighborhood. *See* N.T. 11/15/2021 at 17. Rothman further testified that the Property's location on a narrow 15-foot adjoining street/alleyway – Susquehanna Street – would be looked upon negatively by the average homebuyer, making building residentially even less economically viable. *See* N.T. 11/15/2021 at 18. Rothman made the same observation regarding the Property's position facing garages. *See* 11/15/2021 at 21. Rothman also noted that the Property is not situated in a particularly desirable location within the City. *See* N.T. 11/15/2021 at 18-19. He explained that, therefore, building on the Property for residential purposes would not be economically feasible due to the difficulty of finding people willing to pay the prices required to build residential units at the Property's location. *See* N.T. 11/15/2021 at 18-19.

Rothman also discussed a community called Copper Ridge in nearby Lemoyne, Pennsylvania, as a point of comparison for what would be required to build on the Property residentially. *See* N.T. 11/15/2021 at 20-21; *see also* Rothman Letter to Heinly dated August 5, 2021 (Rothman Letter), attached as an exhibit to

---

[3] The Board apparently accepted this testimony, although we note Heinly's acknowledgment that there was other evidence that the required increase in elevation was only about 18 inches above floor level and could be accommodated by adding a crawl space. *See* Br. of Appellee at 7 (citing Reproduced Record (R.R.) at 208a-09a).

the Supplemental Narrative to the Application, Hearing Exhibit A-3, Reproduced Record (R.R.) at 19a-21a. Copper Ridge was constructed 8-15 years ago in a floodplain with units that had first floor garages and living areas that were elevated up two or three floors. *See* N.T. 11/15/2021 at 20-21. While units similar to those built at Copper Ridge would fit on the Property's footprint, Rothman explained that the price to develop and build such units on the Property would prove more expensive than the expected sale price for those units, and so would result in an economic loss. *See* N.T. 11/15/2021 at 20-21; *see also* Rothman Letter, R.R. at 20a-21a.

In sum, Rothman opined that residential development of the Property was not economically feasible and that a builder would not be able to break even by attempting to so develop the Property. *See* N.T. 11/15/2021 at 21; *see also* Rothman Letter at 3, R.R. at 21a.

Rothman reached the same conclusion regarding commercial development of the Property. *See* N.T. 11/15/2021 at 21. Rothman explained that commercial projects on the Property would face the same economic feasibility issues as residential projects, to wit: building in a floodplain, the narrowness of the street, and the undesirability of the area. *See* N.T. 11/15/2021 at 21-22. Rothman also noted additional issues that would make commercial construction of the Property difficult to undertake and unlikely to succeed upon completion. *See* N.T. 1/15/2021 at 22. Specifically, regarding business patronage, Rothman noted that not many vehicles travel on Susquehanna Street. *See* N.T. 11/15/2021 at 22. Regarding business operation, Rothman noted that the narrowness of Susquehanna Street

4

presents additional commercial problems pertaining to delivery difficulties and customer parking concerns.[4] *See* N.T. 11/15/2021 at 22.

Justin Heinly, Heinly's owner, also testified before the Board. Justin Heinly explained that, if the Application is approved, he intends to rent the parking spaces on the Property to the public and entities that he owns that need parking will go through the same application process as other members of the public to attain such parking. *See* N.T. 9/20/2021 at 46-47. Justin Heinly further testified that the area where the Property is located "is not a desirable location for someone to want residential property." N.T. 7/19/2021 at 95. Justin Heinly explained that, in addition to being in an undesirable part of the City, the Property has a view of only garages, utility sheds, and vacant lots. *See* N.T. 7/19/2021 at 95. He testified that these factors together, along with the Property's location in a floodplain, make the Property an untenable location for a housing project from a financial perspective. *See* N.T. 7/19/2021 at 94-95.

City Planning Director David Clapsaddle (Clapsaddle) testified before the Board on behalf of the City. *See* N.T. 7/19/2021 at 14-18. Clapsaddle reviewed the variance standards from Section 7-323.7(B) of the Zoning Code in relation to the Application and ultimately expressed the City's position that Heinly met its burden to demonstrate entitlement to a variance for the Property. *See id.* Clapsaddle testified that the roughed-in concrete covering the Property posed a hardship on the Property. *See* N.T. 7/19/2021 at 15-16. Clapsaddle further explained that placing a parking lot on the Property would be harmonious with the needs of the City in that it would provide a needed service to the neighborhood, to wit: off-street parking.

---

[4] Rothman noted that businesses in the area are located on Third Street, not the Susquehanna Street alleyway where the Property is located, and that those other buildings have large, existing parking lots. *See* N.T. 11/15/2021 at 23.

*See* N.T. 7/19/2021 at 16-17. Accordingly, Clapsaddle expressed the support of both the City's Planning Commission and Planning Bureau for the grant of the Application, subject to certain conditions.[5] *See* N.T. 7/19/2021 at 17-18.

Additionally, multiple members of the public appeared at the hearing and voiced their support for the Application to the Board. These members of the public included Wendell Hoover, a local resident who opined that a parking lot would be a good use for the Property; Jermaine Grant, a neighbor and local business owner who testified that the Property attracts a lot of crime and that developing it into a proper parking lot would benefit the community; and Angel Melendez, who rents a residence in the neighborhood and also testified that the Property as is attracts crime and that the area would be improved if it was cleaned up and better lighted. *See* N.T. 7/19/2021 at 22-30.

Appellant also testified before the Board to express her opposition to the variance proposed by the Application. *See* N.T. 11/15/2021 at 65-101. Appellant outlined for the Board a history of alleged environmental racism and testified that approval of the Application will be a continuation of historical injustices. *See* N.T. 11/15/2021 at 65-73. Appellant also testified about alleged parking violations and illegal accumulation and/or dumping of trash on the Property and submitted into evidence dozens of photographs allegedly documenting the same.

---

[5] The City's conditions were as follows: (1) Heinly had to receive approval of a building permit and mercantile permit prior to commencing activity to establish a parking lot; (2) Heinly had to receive approval from the Floodplain Administrator for any new permanent installations on the Property prior to the commencement of activity to establish a parking lot; and (3) Heinly needed to include a lighting plan as part of a complete submittal package at the time of application for its permit to establish a parking lot. *See* N.T. 7/19/2021 at 17-18. The Board incorporated each of these conditions in the Board Decision, as well as the additional condition that the Property was to be approved only for a parking lot and that Heinly was prohibited from constructing or developing any structures on the Property without obtaining approval from the appropriate Board or Council. *See* Board Decision at 9-10, Order.

6

*See* N.T. 11/15/2021 at 76-101; *see also* O-5 & O-6, Hearing Exhibits. R.R. at 47a-122a. Appellant further introduced into evidence a petition signed by 102 individuals who Appellant purported were opposed to the Application. *See* Exhibit C-1, Petition from Camp Curtin Neighborhoods United, R.R. at 32a-46a.

Based on the evidence, the Board concluded that Heinly sustained its burden of proof to establish the unnecessary hardship required to prove entitlement to a variance, that Heinly did not create the hardship, and that the variance will not alter the essential character of the neighborhood or be detrimental to the public welfare but would instead improve the neighborhood. *See* Board Decision at 8-9. The Board further concluded that the evidence received in opposition to the Application was insufficient to disprove Heinly's entitlement to the variance requested in the Application. *See id.* at 9. Accordingly, on December 14, 2021, the Board issued the Board Decision granting the Application. *See* Board Decision.

Appellant appealed the Board Decision to the Trial Court.[6] On May 23, 2022, the Trial Court affirmed the Board Decision without taking additional evidence. *See* Order. Appellant timely appealed to this Court.

## II. Issues

Appellant raises several issues on appeal.[7] First, Appellant claims that the Board erred by determining that the Property's unique physical circumstances

---

[6] Heinly intervened in the matter by Notice of Intervention filed with the Trial Court on January 26, 2022.

[7] Where, as here, the trial court has taken no additional evidence, this Court's review is limited to determining whether a zoning board's findings are supported by substantial evidence or whether the zoning board made an error of law in rendering its decision. *Twp. of Exeter v. Zoning Hearing Bd.*, 962 A.2d 653, 659 (Pa. 2009). Further, a zoning board's findings are owed deference, especially as to whether a variance applicant satisfied the unnecessary hardship criterion, in light of the zoning board's expertise and knowledge regarding local conditions. *Marshall v. City of*

7

and conditions created an unnecessary hardship. *See* Appellant's Br. at 18-24. Appellant claims that the evidence at the Application Hearing illustrated mere economic hardship. *See id.*

Second, Appellant claims that the Board erred by determining that the Property cannot be developed in strict conformity with the Zoning Code. *See* Appellant's Br. at 24-26. Appellant claims that the evidence from the Application Hearing failed to establish that permitted RM Zone uses were not viable. *See id.*

Third, Appellant claims that the Board erred by finding that the construction of a commercial parking lot on the Property would not alter the essential character of the neighborhood or harm the community. *See* Appellant's Br. at 26-29. Appellant claims that Heinly's intent to use the parking lot for commercial purposes without the Board imposing limiting conditions would alter the character of the neighborhood and/or harm the community. *See id.*

Finally, Appellant claims the Board erred by granting the requested variance in the absence of evidence that the requested commercial parking lot was the minimum variance that would afford relief and was the least modification possible of the permitted uses in the RM Zone. *See* Appellant's Br. at 29-31.

## III. Discussion

"An application for a variance seeks permission to do something which is prohibited by [a] zoning ordinance. In essence, a variance constitutes an exception, or an overriding of legislative judgment concerning the will of the citizens of the community regarding land use." *Metal Green Inc. v. City of Phila.*, 266 A.3d

---

*Phila.*, 97 A.3d 323, 333 (Pa. 2014); *Azoulay v. Phila. Zoning Bd. of Adjustment*, 194 A.3d 241, 249 (Pa. Cmwlth. 2018) ("An administrative agency's interpretation of the statute it is charged to administer is entitled to deference on appellate review absent fraud, bad faith, abuse of discretion or clearly arbitrary action."); *Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 9 (Pa. Cmwlth. 2015).

8

495, 506 (Pa. 2021). As such, "[a] variance is an extraordinary exception and should be granted sparingly[.]" *Heisterkamp v. Zoning Hearing Bd. of City of Lancaster*, 383 A.2d 1311, 1314 (Pa. Cmwlth. 1978). "The burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling." *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011); *see also Fairview Twp. v. Fairview Twp. Zoning Hearing Bd.*, 233 A.3d 958, 963 (Pa. Cmwlth. 2020) (noting that the burden on the applicant for a use variance is heavy). Because a use variance involves a "proposal to use the property in a manner that is wholly outside the zoning regulation," our courts have required strict proof to obtain a use variance, without employing the relaxed standards that have been permitted for dimensional variances. *Hertzberg v. Zoning Bd. of Adjustment*, 721 A.2d 43, 47 (Pa. 1998).

Normally, a use variance applicant must prove that there is a unique hardship affecting the property; that granting the requested variance will not result in an adverse effect on the public health, safety, or general welfare; and that the requested variance is the minimum variance that will afford relief with the least modification possible. *See Marshall v. City of Phila.*, 97 A.3d 323, 329 (Pa. 2014); *see also Metal Green*, 266 A.3d at 508. Generally, a variance "is appropriate only where the *property*, not the person, is subject to hardship." *Yeager v. Zoning Hearing Bd. of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (quoting *Szmigiel v. Kranker*, 298 A.2d 629, 631 (Pa. Cmwlth. 1972)) (emphasis in original) (internal quotation marks and citation omitted). "Mere economic hardship will not of itself justify the grant of a variance." *Marshall*, 97 A.3d at 330. Further, as a general matter, the fact that a "property may be used more profitably with the proposed use is not grounds for granting a variance." *Fairview Township*, 233 A.3d at 963; *see*

9

*also Marshall*, 97 A.3d at 330 ("evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance"); *see also Lawrenceville Stakeholders v. City of Pittsburgh Zoning Bd. of Adjustment*, 247 A.3d 465, 475 (Pa. Cmwlth. 2021) ("Where variances are sought solely to enhance profitability, the asserted hardship arises not from the nature and circumstances of the property itself but is self-inflicted by way of the variance applicant's preferred or proposed use of the property."); *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment of City of Phila.*, 921 A.2d 536, 545 (Pa. Cmwlth. 2007), *aff'd sub nom. Spahn v. Zoning Bd. of Adjustment*, 977 A.2d 1132 (Pa. 2009) ("a variance will not be granted solely because the applicant will suffer an economic hardship if he does not receive the same").

> An applicant for a variance must establish all the following criteria:
>
> (1) an unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.

*Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 8 (Pa. Cmwlth. 2015) (quoting *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014) (citation omitted) (additional quotation marks omitted)). These well-established standards for variances have been codified in the Pennsylvania

Municipalities Planning Code (MPC)[8] and the Zoning Code. *See* Section 910.2(a)(1-5) of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a)(1)-(5);[9] *see also* Zoning Code Section 7-323.7.B.[10]

---

[8] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[9] Section 910.2(a)(1)-(5) of the MPC provides:

> (a) The board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. The board may by rule prescribe the form of application and may require preliminary application to the zoning officer. The board may grant a variance, provided that all of the following findings are made where relevant in a given case:
>
> > (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.
> >
> > (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
> >
> > (3) That such unnecessary hardship has not been created by the [applicant].
> >
> > (4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2(a)(1)-(5).

[10] Section 7-323.7.B of the Zoning Code sets forth variance award standards that are effectively identical to those contained in Section 910.2 of the MPC, with only minor, non-substantive stylistic editing differences. *Compare* Zoning Code Section 7-323.7.B, *with* 53 P.S. § 10910.2(a). Zoning Code Section 7-323.7.B reads:

> The [] Board may grant a variance provided that all of the following findings are made where relevant in a given case:
>
> (1) There are unique physical circumstances or conditions (including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property) and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of this chapter in the neighborhood or district in which the property is located;
>
> (2) Because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Code, and a variance is therefore necessary to enable the reasonable use of the property;
>
> (3) Such unnecessary hardship has not been created by the [applicant];
>
> (4) The variance, if authorized, will not alter the essential character of the neighborhood or zoning district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and
>
> (5) The variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

12

Appellant first claims the Board erred by finding that Heinly demonstrated that denial of the variance request will result in an unnecessary hardship because Heinly alleged only economic hardship as the basis for its use variance request. We agree.

Under the Zoning Code, to be granted a variance in the City, Heinly first must demonstrate a unique physical circumstance or condition of the Property that created an unnecessary hardship in developing the Property. *See* Zoning Code Section 7-323.7.B; *see also Yeager*, 779 A.2d at 598. Unnecessary hardship requires evidence demonstrating at least one of three alternatives: "'(1) the physical features of the property are such that it cannot be used for a permitted purpose; (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property is valueless for any purpose permitted by the zoning ordinance.'" *S. of S. St. Neighborhood Ass'n v. Phila. Zoning Bd. of Adjustment*, 54 A.3d 115, 121 (Pa. Cmwlth. 2012) (*SOSSNA*), *overruled in part on other grounds by Scott v. City of Phila.*, 126 A.3d 938, 950 (Pa. 2015) (quoting *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 812 (Pa. Cmwlth. 2005)).

"An applicant is not required to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose." *S. Broad St. Neighborhood Ass'n v. Zoning Bd. of Adjustment*, 208 A.3d 539, 548 (Pa. Cmwlth. 2019) (quoting *Marshall*, 97 A.3d at 330) (internal quotation marks and original emphasis omitted). However, this Court has recently explained that,

> although valuelessness is not a required showing, "[m]ere economic hardship will not of itself justify a grant of a

Zoning Code § 7-323.7.B.

13

variance." [*Marshall*, 97 A.3d at 330] (quoting *Wilson v. Plumstead* [*Twp.*] *Zoning Hearing* [*Bd.*], [] 936 A.2d 1061, 1069 ([Pa.] 2007)). "[E]conomic factors are relevant," the Supreme Court has held, "albeit not determinative, in a variance assessment." *Id.* at 331. Moreover, . . . "[i]n evaluating hardship the use of adjacent and surrounding land is unquestionably relevant." *Valley View* [*Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637,] 640 [(Pa. 1983)].

*In Re Garcia*, 276 A.3d 340, 352 (Pa. Cmwlth. 2022).

The Board summarized Rothman's evidence relevant to the unnecessary hardship determination in this matter as follows:

> The . . . [P]roperty is located in the 100-year flood zone. [Heinly's] [r]eal [e]state [e]xpert, William F. Rothman, [f]ounder/[p]artner of RSR Realtors, testified that any contemplated development [of the Property] would require the first[]floor elevation to be above the flood level which would (1) significantly increase the construction costs and (2) the structures would be out of place with the surrounding elevations. [] Rothman credibly based his opinion of construction costs . . . on recent sales in the Copper Ridge subdivision in Lemoyne Borough which had a first floor elevation that is at grade and consistent with neighboring townhouses and rowhouses. The range of sales for the Copper Ridge homes was $229,000-$245,000. To construct similar homes in the proposed area on Susquehanna Street would cost less than $300,000, yet they would sell for less than the homes in Copper Ridge since they would not have a family room on the first floor due to the flood[]plain. Therefore, the living area would be smaller. Also, [] Rothman testified that the location of the . . . [P]roperty is less desirable than Copper Ridge given the tight street and the floodplain, among other reasons. He concluded by stating that no residential use is reasonable for the property because it is not economically feasible to build [a] dwelling on site.

14

Board Decision at 7 (internal record citations and footnote omitted); *see also* Rothman Letter. Regarding prospective commercial uses for the Property, the Board summarized Rothman's testimony as follows:

> Susquehanna Street is a narrow 15[-foot-]wide alleyway that is not wide enough for on[-]street parking and two-way traffic. Many permitted uses in the RM [Z]one would cause more vehicular trips per day than the proposed parking lot. These uses include adult daycare, retail bakery, bed and breakfast, business services, childcare, coffee shop or café, community center, conference center, convenience store, artisan's studio, emergency treatment center, farmer's market/flea market, financial institution, fitness center, florist and similar commercial uses. These uses would create traffic and require parking that is not available. Conversely, the proposed use is not a traffic creator and would reduce the parking strain in the area. The [P]roperty had been marketed for commercial uses for many years but remains vacant for the reasons above.

Board Decision at 7 (internal record citation omitted); *see also* Rothman Letter. The Board concluded that, "[b]ased on the testimony and expert report of [] Rothman, [Heinly] has established the unnecessary hardship required to prove a variance." Board Decision at 7.[11] We do not agree with the Board's conclusion that Heinly established an unnecessary hardship.

---

[11] The Trial Court likewise noted that

> Rothman's testimony supports a finding that it would be cost prohibitive for [Heinly] to conform the [P]roperty to a permitted use, and that the [P]roperty cannot be developed in strict conformity with the [Zoning Code]. This testimony supports a finding of a hardship stemming from the unique characteristics of the [P]roperty itself and

15

To meet the first criterion for a variance under Section 910.2(a)(1) of the MPC, an applicant must establish "physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions *and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district . . . .*" 53 P.S. § 10910.2(a)(1) (emphasis added). "One applying for a variance must demonstrate that the zoning regulations complained of uniquely burden his property; and mere economic hardship resulting from the necessity for complying with the regulations shared in common with all other landowners is not unnecessary hardship." *Kar Kingdom, Inc. v. Zoning Hearing Bd. of Middletown Twp.*, 489 A.2d 972, 976 (Pa. Cmwlth. 1985) (citing *Appeal of Buckingham Devs., Inc.*, 433 A.2d 931, 933 (Pa. Cmwlth. 1981)). A hardship generally applicable in the area must be remedied by an amendment of the zoning ordinance, not by piecemeal variances. *Hill Dist. Project Area Comm., Inc. v. Zoning Bd. of Adjustment*, 638 A.2d 278, 281 (Pa. Cmwlth. 1994).

Notably, this principle holds even if it means the applicant cannot develop his property. Otherwise, every property owner in a floodplain would potentially have justification to seek a variance, rendering the floodplain ordinance useless. In another zoning case involving a floodplain, this Court observed, in denying a variance, that an applicant forced to comply with the floodplain ordinance would be, "for all practical purposes[,] stuck with a useless property. But in the interest of all the residents, he must suffer along with other property owners who are

that those characteristics prevent the [P]roperty from being developed in conformity with the [Zoning Code].

Order at 3.

16

likewise affected by the ordinance." *Kraiser v. Zoning Hearing Bd.*, 406 A.2d 577, 578-79 (Pa. Cmwlth. 1979).

The same reasoning applies here. Much of Harrisburg is subject to flooding. "The City of Harrisburg has a long history with [its] waterfront along both the Susquehanna River and Paxton Creek; a connection that has complemented (by enabling and supporting industry and recreation) and complicated (major flooding events) development in the city." CITY OF HARRISBURG, FLOODPLAIN INFORMATION, https://harrisburgpa.gov/planning/floodplain/ (last visited August 8, 2024). Heinly's problem of its Property's location in a floodplain is far from unique. That it arguably prevents development of the Property for residential purposes does not entitle Heinly to a variance for a commercial parking lot.

In addition, the conditions that purportedly discourage permitted commercial uses of the Property, such as the narrowness of the street and lack of parking, are common to all of Susquehanna Street, not just to the Property. As explained above, the solution for any problems arising from such conditions is an amendment to the zoning ordinance, not piecemeal variances.

Moreover, we agree with Appellant that Heinly's evidence proves only a purely economic hardship upon which a variance may not be solely based. The evidence before the Board revealed that the Property consists of 0.31 acres of impervious concrete left over from a demolished building situated in a 100-year floodplain. Rothman testified that the position of the Property behind a line of garages and next to a vacant lot, as well as the narrowness of Susquehanna Street and the Property's location in a less desirable section of the City, contribute to make both residential and/or commercial construction not economically feasible for the Property. While this evidence may illustrate the economic reasons why development

17

of the Property for townhouses or certain businesses would prove challenging or not cost effective to a developer, such evidence does not illustrate a hardship attendant to the Property itself.

As stated above, this Court has previously determined that solely economic reasons do not support a claim of unnecessary hardship for the purpose of a variance application. In *Borough of Pitcairn v. The Zoning Hearing Board of the Borough of Pitcairn and MonJon, LLC* (Pa. Cmwlth., No. 1253 C.D. 2021, filed October 10, 2023) (*Pitcairn*),[12] the Court affirmed the reversal of a zoning hearing board's grant of a variance from the payment of required occupancy fees for a 22-unit boarding house wherein the units were occupied on a short-term basis. The zoning code at issue in *Pitcairn* required the payment of a $75 fee for an occupancy permit every time one of the units had a new occupant, which fee severely compromised the boarding house's profitability. *See Pitcairn*, slip op. at 2. This Court agreed that the "hardship" presented by the required fees in this matter was an economic hardship that resulted from the property owner's own business plan and that, therefore, the property owner did not establish an unnecessary hardship for the purpose of obtaining a variance. *See id.*, slip op. at 12-13.

Likewise, in *Lawrenceville*, this Court affirmed a trial court's reversal of a granted variance where a property owner sought to build more units on a property than were permitted by the zoning code in question for the reason that, the property owner argued, building fewer than the requested number of units would not allow for profitable development of the property. *See Lawrenceville*, 247 A.3d at

---

[12] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), unreported panel decisions of this Court issued after January 15, 2008, may be cited for their persuasive value.

18

477.  The Court noted that such alleged hardship was purely economic and self-inflicted in that it represented a hardship solely created by the landowner.  *See id.*

Here, Rothman and Justin Heinly's testimony made clear that the Property can be used for a permitted purpose.  Each testified that the Property could be developed with townhouses like those at Copper Ridge, but that to develop such units on the Property would not make economic sense without a profit margin for a townhouse project.  Thus, as in *Lawrenceville*, Heinly did not present evidence that the nature of the Property itself precludes development in accordance with the Zoning Code, but rather only that Heinly would need relief from the Zoning Code requirements to reach its desired profitability margins for a specific type of development.  *See Lawrenceville*, 247 A.3d at 477.

Simply put, the evidence presented in this matter illustrates that Heinly wants to use the Property as a paid parking lot, a use that is not allowed by the Zoning Code in the RM Zone.  As this Court has observed, "[w]here variances are sought solely to enhance profitability, the asserted hardship arises not from the nature and circumstances of the property itself but . . . by way of the variance applicant's preferred or proposed use of the property."  *Lawrenceville*, 247 A.3d at 475.  Enhancing the Property's profitability by securing a variance to conduct an otherwise prohibited activity on the Property is exactly what Heinly is attempting to do in the instant matter.  Justin Heinly and Rothman's testimony made clear that approved uses are possible on the Property, just not at Heinly's preferred rate of profitability.  Therefore, if a hardship exists, it is occasioned simply by Heinly's business plan and preferred use of the Property.  *See Pitcairn*.  Further, we observe that such hardship is to Heinly's bottom line of desired profits, not to the Property

19

itself. Thus, the Board erred by determining that Heinly proved an unnecessary hardship upon which the Board could have based a variance. *See Lawrenceville*.

The City is not required to provide variances to property owners to comport with property owners' desired but prohibited uses of properties. The Zoning Code lays out permitted uses for properties in the City. These permitted uses are public and easily ascertainable by prospective property owners before a property's purchase pursuant to the axiomatic notions of due diligence and caveat emptor. In this case, Heinly purchased a property in a floodplain and thus subject to the restrictions thereon pursuant to the Zoning Code. The Board is required to apply the Zoning Code as written, not to contort the Zoning Code to a desired or proposed use by a property owner, even where such a proposed use would ostensibly or arguably improve the condition of the property's neighborhood. Thus, we agree with Appellant that the Board erred by granting Heinly a variance in the absence of an unnecessary hardship attendant to the Property itself as opposed to one arising from Heinly's business plan for the Property.

Appellant also insists Heinly failed to demonstrate that the requested variance represents the minimum variance necessary to afford relief. We again agree with Appellant that Heinly has not satisfied its burden in that regard.

Notably, Heinly has not addressed the separate, alternate variance authorized in the Zoning Code's floodplain provisions. Section 7-315.21(c) of the Zoning Code[13] allows for variances from compliance with floodplain zoning

---

[13] Section 7-315.21 of the Zoning Code provides:

> If compliance with any of the requirements of this Chapter would result in an exceptional hardship to a prospective builder, developer or landowner, the Zoning Hearing Board may, upon application, grant relief from the strict application of the requirements of this

Chapter. The Zoning Hearing Board of the City of Harrisburg shall have exclusive jurisdiction to hear and render decisions on requests for variances as provided below:

(a) If a Variance is requested, the provisions of Chapter 7-323 shall apply. The Zoning Hearing Board shall review variance applications following review and comment from the Harrisburg Planning Commission.

(b) No variance shall be granted for any activity prohibited by Section 7-315.27(a).

(c) In addition to the provisions for a variance provided elsewhere in the Zoning Code, the Zoning Hearing Board may authorize a variance for new construction, substantial improvements, or alteration of uses in the Special Floodplain Area, Approximate Floodplain Area or any Floodway Area based on the following criteria:

(1) No variance shall be granted for any construction, development, use or activity within any Floodway Area that would cause any increase in [Base Flood Elevation (BFE)];

(2) No variance shall be granted for any construction, development, or activity within any Special Floodplain Area that would, together with all other existing and anticipated development, increase the BFE more than one (1) foot at any point.

(3) Except for a possible modification of the regulatory flood elevation requirement involved, no variance shall be granted for any of the other requirements pertaining specifically to Section, 7-315.25, Development Which May Endanger Human Life.

(4) If granted, a variance shall involve only the least modification necessary to provide relief.

(5) In granting any variance, the Zoning Hearing Board shall attach whatever reasonable conditions and safeguards it considers necessary in order to protect the public health,

safety, and welfare, and to achieve the objectives of this Chapter.

(6) Whenever a variance is granted, the Floodplain Administrator shall notify the applicant in writing that:

(A) The granting of the variance may result in increased premium rates for flood insurance.

(B) Such variances may increase the risks to life and property.

(7) In reviewing any request for a variance, the Zoning Hearing Board shall consider, at a minimum, the following:

(A) That there is good and sufficient cause.

(B) That failure to grant the variance would result in exceptional hardship to the applicant.

(C) That the granting of the variance will neither result in an unacceptable or prohibited increase in flood heights, additional threats to public safety, or extraordinary public expense, nor create nuisances, cause fraud on, or victimize the public, or conflict with any other applicable state or local ordinances and regulations.

(8) A complete record of all variance requests and related actions shall be maintained by the City of Harrisburg. In addition, a report of all variances granted during the year shall be included in the annual report to the [Federal Emergency Management Agency].

(9) Notwithstanding any of the above, however, all structures shall be designed and constructed so as to have the capability of resisting the 1% annual chance flood.

Zoning Code § 7-315.21.

provisions that "would result in an exceptional hardship," where the applicant meets the criteria set forth in that section. Zoning Code, § 7-315.21(c). Specifically, Heinly has not explained whether or why a variance under Section 7-315.21(c) was not available; nor has Heinly established that its proposed use variance constitutes a lesser modification to the Zoning Code's requirements than a dimensional variation of the minimum elevation that would allow cost-effective residential construction.

Indeed, a dimensional variance under Section 7-315.21 would plainly be more minimal than the use variance Heinly seeks. As our Supreme Court has explained,

> [w]hen seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation.

*Hertzberg*, 721 A.2d at 47. Therefore, without establishing that it could not meet the criteria for a dimensional variance under Section 7-315.21, Heinly perforce could not and did not demonstrate that the use variance it seeks is the minimum relief necessary to allow development of the Property. *Accord Larsen v. Zoning Bd. of Adjustment*, 672 A.2d 286, 292 (Pa. 1986) (explaining that a variance must constitute "the least modification of the regulation at issue" that will provide relief; concluding that the zoning board erred in granting a variance in the absence of evidence addressing "the possibility of less drastic alternatives").

Accordingly, Heinly has not met the requirements to obtain a use variance.

## IV. Conclusion

For the foregoing reasons, we reverse the Trial Court Order.


_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laura Harding,                              :
                    Appellant               :
                                            :
          v.                                :
                                            :
Harrisburg City Zoning                      :
Hearing Board                               :
                                            :
          v.                                :
                                            :  No. 633 C.D. 2022
Heinly Homes, LLC                           :

## **O R D E R**

AND NOW, this 9th day of August, 2024, the May 23, 2022 order of the Court of Common Pleas of Dauphin County is REVERSED.

_____
CHRISTINE FIZZANO CANNON, Judge