In re:  Appeal of Scott E. and : 
Kathryn A. MacDonald from the : 
February 1, 2022 Decision and Order : 
of the Zoning Hearing Board of : 
Lower Makefield, PA : 
Re:  Tax Map Parcels #20-039-004-001 : 
& 20-039-004-002 : 
 : 
Appeal of:  Scott E. MacDonald and : No. 1195 C.D. 2022
Kathryn A. MacDonald : Submitted:  October 7, 2025

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT                    FILED:  April 7, 2026

Scott E. MacDonald and Kathryn A. MacDonald (Objectors) appeal an order of the Court of Common Pleas of Bucks County (trial court), denying their land use appeal of a decision of the Lower Makefield Township Zoning Hearing Board (Zoning Board).  The Zoning Board granted, with conditions, the application of Gabriel Deck and Alexandra Calukovic-Deck (Landowners) for dimensional variances needed to build a single-family residence.  The conditions require Landowners to do a floodplain survey and to have their stormwater management design approved by Lower Makefield Township (Township).  Objectors argue, *inter alia*, that the Zoning Board improperly delegated its decision-making responsibility to the Township.  We affirm.

# Background

Landowners acquired two adjoining vacant lots (Property) owned by Intervenors, Troy Bausinger and Amy Bausinger. Landowners seek to construct a single-family, detached dwelling, a use permitted by right in the Township's R-2 Residential Medium Density District. The first lot (Flag Lot) is rectangular; landlocked; and has an area of approximately 0.7 acres. It borders Objectors' property. The second lot (Flagpole Lot) is 410 feet long and 18 feet wide; has an area of approximately 0.169 acres; and provides the access to the Flag Lot.

The Property is subject to resource restrictions under the Township's Zoning Ordinance[1] and burdened by easements. There is a 10-foot-wide sewer easement and an overlapping storm sewer easement on the Flagpole Lot. Silver Creek, which runs through the Property, has an easement of 25 feet on either side of the stream's center line. The easements total approximately 0.27 acres. Because of the easements and resource protected lands, only 0.08 acres, or 3,700 square feet, of net buildable land remains on the Property. Landowners' development will require 4,655 square feet of impervious surface coverage for the house, driveway, deck, and related improvements.

Relevant to resource protection, the Zoning Ordinance provides that "[o]n lots which include lands with resource restrictions, the minimum building setbacks shall be measured from the limit of the resource protected lands rather than from the lot lines so that the required minimum yard is free from resource restricted lands." ZONING ORDINANCE, §200-61.C. It further provides that the "[r]esource protection ratio for floodplain shall be 100%. No structures, filling, piping, diverting

---

[1] TOWNSHIP OF LOWER MAKEFIELD ZONING ORDINANCE (Zoning Ordinance). The Zoning Ordinance can be found at Chapter 200 of the Code of the Township of Lower Makefield, available at: http://ecode360.com/11226088 (last visited April 6, 2026).

or stormwater detention basins shall be permitted within the floodplain district[.]"[2] *Id.*, §200-51.B(1)(b). Similarly, the "[r]esource protection ratio for wetlands and waters of the commonwealth shall be 100%. No filling, grading, clearing or development is permitted." *Id*., §200-51.B(4)(d). Finally, the Zoning Ordinance provides that "[n]o dwelling shall hereafter be erected unless there is a direct access to it through an open space on the same lot. Such open space shall be not less than 25 feet in width and shall extend from the dwelling to a street." *Id.*, §200-64.

On February 2, 2021, Landowners filed an application for seven variances. Subsequently, they amended the application to request four variances: (1) relief from Section 200-61.C of the Zoning Ordinance to permit the setbacks on resource protected lands to be measured from the lot lines; (2) relief from Section 200-51.B(1)(b) to permit a 10% temporary disturbance of the floodplain area during the construction phase; (3) relief from Section 200-51.B(4)(d) to permit a 22% disturbance of the wetlands; and (4) relief from Section 200-64 to permit an 18-foot-wide driveway instead of the required 25-foot width. Landowners also reduced the extent of relief requested for two of the four variances.[3]

The Zoning Board conducted several public hearings on Landowners' application for a variance.

Justin Geonnotti, P.E., a professional engineer, testified on behalf of Landowners. He explained that Landowners prepared an Environmental Resources Site Analysis Map (ERSAM) Plan, as required by the Township. Notes of Testimony

---

[2] The Zoning Ordinance defines floodplain area as "[a] relatively flat or low land area which is subject to partial or complete inundation from an adjoining or nearby stream, river or watercourse; and/or any area subject to the unusual and rapid accumulation of surface waters from any source." ZONING ORDINANCE, §200-53.

[3] Landowners initially sought a temporary disturbance of 35.2% of the floodplain and a 40.8% disturbance of the wetlands.

(N.T.), 6/15/2021, at 20; Reproduced Record at 125a (R.R. ___). Easements for the storm sewer, creek clearing, and wetlands leave 0.08 acres for building, which is approximately 10% of the total site. The resource setbacks in Section 200-61.C of the Zoning Ordinance require a 35-foot front yard setback, a 45-foot rear yard setback, and a 15-foot side yard setback. These setbacks would leave a negative building envelope of 0.01 acres. Geonnotti explained that a variance was needed to measure the setbacks from the lot lines or else the Property would not be developable.

Wetlands buffer requirements in Section 200-51.B(4)(d) of the Zoning Ordinance are determined according to site characteristics. Geonnotti stated that the required buffer for the Property is 100 feet. However, Geonnotti explained that this buffer can be reduced with more vegetation. Landowners intend to plant deciduous trees that will filter groundwater before it enters the Creek. With these trees, the buffer can be reduced to 50 feet, which is the minimum required by the Zoning Ordinance and eliminates the need for a variance.

Geonnotti explained that the Flagpole Lot will consist of an asphalt driveway, that will include a 2-foot-wide river stone apron that will reduce runoff into the wetland buffer and stream. Additionally, because the Flagpole Lot is 18 feet wide, a variance is needed from the 25-foot minimum width. ZONING ORDINANCE, §200-64.

Geonnotti testified that Landowners reduced the size of the house to 2,008 square feet and moved its location outside the floodplain. As such, 767 cubic feet of storm water had "to be treated and infiltrated into the ground to recharge the aquifer and to take care of water quality on the site." N.T., 6/15/2021, at 48; R.R.

153a. Landowners propose a rain garden to collect the water from the entire roof of the house, which Geonnotti described as follows:

> [W]e are going to be piping the roof around the building to the rain garden, where it's going to go through a planted soil media, an amended soil media, which is basically a sand/soil mixture which provides water quality, storm water detention, and rate control[.]
>
> . . . .
>
> [G]utters [around the roof] are going to be conveyed into downspouts. The downspouts are going to be piped underground to the rain garden. We are also proposing potentially a rain barrel on the corner of the building, which could be used as capturing rain use[.]

N.T., 6/15/2021, at 50-51; R.R. 155a-56a. The proposed system's capacity is "over 200 percent of the storm water controls required." N.T., 6/15/2021, at 54; R.R. 159a.

As to the Zoning Ordinance's prohibition against building in the floodplain, Geonnotti explained that Landowners' dwelling will be placed on the edge of the floodplain. "Because we are building right up to the flood fringe, construction activities are going to require some level of staging and maybe some disturbance temporarily within that area to construct the house." N.T., 6/15/2021, at 59; R.R. 164a.[4] Landowners need a variance to permit a 10% temporary disturbance to the flood fringe during construction, which would not cause any permanent changes to the floodplain.

Several neighbors opposed Landowners' variance application and testified.

---

[4] Geonnotti explained that "the deck and corners of the house [] are [within] five, ten feet [] of the flood fringe area." N.T., 6/15/2021, at 60; R.R. 165a.

Objectors reside on property adjacent to the Flag Lot. One of them, Scott MacDonald, is a certified professional geologist and testified that Landowners' house will be located in the floodplain. Thus, it cannot be built. Any building on the Property will exacerbate storm water events, thereby affecting "[his] property and others in downstream areas." N.T., 8/31/2021, at 13; R.R. 397a. MacDonald presented several videos of different storm events and photographs showing the erosion caused by rainfall.

Vincent Fioravanti, a certified civil engineer and land surveyor, testified as an expert on behalf of Objectors. He opined that Landowners' house will constitute a permanent disturbance to the floodplain. He challenged Geonnotti's use of materials from the Federal Emergency Management Agency's (FEMA) National Flood Insurance Program to establish the floodplain borders. He disagreed that planting additional trees would be helpful and opined that Landowners' stormwater management strategy will actually cause additional flooding.

Fioravanti testified that the Zoning Ordinance[5] requires that "wetlands located adjacent to a stream within two miles of the Delaware River" undergo "an independent wetland study." N.T., 8/17/2021, at 10; R.R. 327a. Because the Property is less than two miles from the Delaware River, this independent study was

---

[5] It states:

> (e)    If any of the following site-specific criteria are applicable, the Township shall require an Independent Environmental Impact Assessment as set forth in Appendix to this chapter:
>
> . . . .
>
> > [7]    Wetland abutting a watercourse terminating in the Delaware River less than two miles from the site.

ZONING ORDINANCE, §200-51.B(4)(e)[7].

required but not done. He disagreed that the proposed rain garden would provide effective storm water management.[6]

Geonnotti responded to Objectors. He explained that the rain garden is designed to hold water during a storm and then discharge it at a slower rate. Landowners' house is higher than the stream, and the Property grades to the stream. Accordingly, water flows towards the creek, not towards Objectors' property. Geonnotti addressed Fioravanti's testimony, explaining that FEMA floodplain management requirements are used by municipalities to regulate floodplains. The Property was field surveyed using GPS and "tied into the FEMA benchmarks[.]" N.T., 11/30/2021, at 51; R.R. 549a. Fioravanti field surveyed the perimeter of the Property, but "[h]e never accessed the actual property itself." N.T., 11/30/2021, at 52; R.R. 550a. Geonnotti testified that the Zoning Ordinance permits Landowners "to develop into the floodplain, not the floodway." N.T., 11/30/2021, at 56; R.R. 554a. Even so, Landowners' house will be located outside the floodplain, and Landowners' field survey is accurate.

**Zoning Board Decision**

The Zoning Board granted Landowners' variance request, subject to the following conditions:

> 1. The wetland buffer will be extended 50' with additional trees planted as recommended or required by the Township, including providing additional wetland restoration with appropriate wetland plantings to mitigate downstream flooding and plant density subject to the review and approval of the Township Engineer and a landscape architect;

---

[6] In addition to Objectors, several other neighbors, all of whom were unrepresented, requested party status and testified in opposition to Landowners' variance request. Their objection was principally motivated by environmental concerns.

7

2.     The wetland buffer will be restricted on the Record by the filing of a Conservation Easement Declaration of Restriction which will prohibit any future construction within the buffer area and which will be finalized prior to the issuance of a Building Permit;

3.     The wetland buffer area with [sic] be set off by a split rail fence including appropriate signage to prevent any encroachment;

4.     The stormwater roof gutters will be connected to downspouts that are connected and flow to the proposed rain garden;

5.     [Landowners] shall provide additional elevation by a licensed surveyor on a 10' by 10' grid in the area of the floodplain to determine the exact location of the floodplain and that the proposed building will not be within the floodplain, nor within the margin of error for said floodplain; and

6.     The design of the stormwater management system shall account for and handle the 100-year storm subject to the review and approval of the Township Engineer.

Zoning Board Decision at 25-26, Order.

In reaching its decision, the Zoning Board made the following findings:

11. [] MacDonald testified about the environmental impact the project would pose to his property as well as the natural resources in the area, which are already experiencing degradation. The problem would allegedly be exacerbated by the proposed project. He did not believe the property was a buildable lot. Property values would also be negatively impacted.

. . . .

14. Numerous neighbors were sworn in, some requested party status and all opposed the Application. . . .

15. The neighbors' concerns were focused on the deterioration of the stream, impact of wildlife, flooding, water flows, impact to the neighbors, exacerbation of current conditions, climate change, opening up to more development in the future and related issues.

8

. . . .

17. [] Geonnotti testified that the flagpole lot is an existing non-conforming lot due to its shape/size and the flag lot is non-conforming as it does not have frontage on any public street.

18. The proposed project was amended following concerns from the Township and neighbors. As a result, the footprint of the home was reduced . . . and the location of the home was relocated outside of the floodplain.

19. The Board found both [] Geonnotti and [] Fioravanti to be credible.

20. The Board found that without zoning relief, the property could not be developed.

. . . .

23. The Board proposed explicit conditions on the project to ensure the wetland buffer will be preserved and sufficient plantings will be placed to promote wetland and water health, a Conservation Easement will be Recorded to prohibit future construction within the buffer area, the wetland buffer area will be set off by a fence and signage, the stormwater system will be properly designed and constructed to handle a 100-year storm; and the exact location of the floodplain will be determined using detailed grid calculations so that the project will not intersect with the floodplain.

24. The Board found that the conditions, coupled with the revised Plans, further protect[] the natural resources lands, reduces or eliminates certain environmental impacts, takes into consideration concerns from the neighbors and ascertains once and for all the exact location of the floodplain and ensures the proposed home does not intersect with same.

25. The Board found that the neighbors' concerns were adequately addressed by the Revised Plans.

Zoning Board Decision, Finding of Fact Nos. 11, 14-15, 17-20, 23-25.

The Zoning Board concluded that Landowners demonstrated unnecessary hardship.[7] The Flagpole Lot is an existing non-conforming lot that did not have to meet the required lot width of 25 feet; the Flag Lot is landlocked. The Flag Lot and the Flagpole Lot, when combined, "have a negative building envelope due to the various [e]asements, resource protected lands, setbacks and buffers." Zoning Board Decision, Conclusion No. 28. Absent zoning relief, "[Landowners] would be unable to develop the property with a single-family [home], which is a by-right project, thus sterilizing the lot." *Id.*, Conclusion No. 29. The Zoning Board concluded that Landowners did not create the hardship and that the requested variances "would not alter the essential character of the neighborhood, nor substantially impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare." *Id.*, Conclusion No. 31. It noted that many neighboring homes were constructed within the floodplain or the wetland buffers; do not comply with the existing Zoning Ordinance; and may be causing the stream degradation and flooding. Landowners "significantly downsized" the size of the variances by reducing the extent of setback footage relief, "the footprint of the home," and by moving the dwelling "out of the floodplain." *Id.*, Conclusion Nos. 37-39. The variances represented the minimum necessary.

---

[7] The Zoning Board considered the criteria for a variance set forth in Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC). Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10910.2. They are: (1) unnecessary hardship will result if the variance is denied, due to the property's unique physical conditions; (2) because of these physical conditions, a variance is necessary to enable a reasonable use of the property; (3) the hardship is not self-inflicted or self-imposed; (4) granting the variance will not alter the neighborhood's essential character nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief from strict conformity with zoning requirements. Section 910.2 of the MPC, 53 P.S. §10910.2; *accord* ZONING ORDINANCE, §200-97.

Objectors appealed.[8] Without taking additional evidence, the trial court affirmed the Zoning Board's decision. Objectors then appealed to this Court. In its Pa.R.A.P. 1925(a) opinion, the trial court explained that it affirmed the Zoning Board's decision, on the condition that more elevations of the floodplain would be done. However, after reviewing Objectors' statement of errors complained of on appeal, the trial court learned that the site survey had not yet been completed. Accordingly, the trial court requested this Court to remand the matter for "appropriate action." Trial Court Pa.R.A.P. 1925(a) Op., at 7.

**Appeal**

On appeal, Objectors raise five issues.[9] Some of the issues are waived.[10] Essentially, Objectors argue that the Zoning Board erred in conditioning its grant of the variances on Landowners performing a floodplain survey and on meeting specified criteria in the stormwater management design.[11]

---

[8] Following the appeal from the Zoning Board, on March 25, 2022, Intervenors filed a notice of intervention. The right to variance relief is not specific to the applicant; rather, it runs with the land. *See Nowicki v. Zoning Hearing Board of Borough of Monaca*, 91 A.3d 287, 296 (Pa. Cmwlth. 2014).

[9] Objectors' statement of questions involved states:

> 1. Because the [t]rial [c]ourt affirmed the February 1, 2022 Order of the [Zoning Board] under the assumption that the post-hearing floodplain site survey, paragraph 5 therein, would be satisfied in "due time", and in its Memorandum Opinion . . . recommended a remand for further disposition, should this Court remand to the [t]rial [c]ourt with an Order that [Intervenors] be compelled to timely conduct the floodplain site survey subject to the onsite presence and participation by [Objectors'] expert to monitor and verify the post-hearing floodplain site survey methodology and results?

> 2. Should this Honorable Court reverse the [Zoning Board] Decision and remand to the [t]rial [c]ourt for further proceedings because one of the [three]-member [Zoning Board] majority voting to grant variance relief stated on the [Zoning Board] Record that he would reverse his vote, and join the two [Zoning Board]

11

members who proposed a motion to deny all variance relief, if [Intervenors] do not prove by a post-hearing floodplain site survey, reportable only to the Township Engineer, that the location of the proposed residential structure is not within the floodplain, especially and again considering that [Intervenors] have not performed the post-hearing floodplain site survey in the intervening [20] months since the [Zoning Board] closed the record?

3. Did the [t]rial [c]ourt abuse its discretion and commit manifest errors of law in its October 3, 2022 OPINION and ORDER, affirming the [Zoning Board's] February 1, 2022 DECISION,[] by, *inter alia*:

a. finding that the grant of relief to [Landowners] was supported by substantial evidence despite recognizing that "[t]he crux of the [Zoning Board's] Decision rested on the location of the floodplain . . . [and] whether the floodplain encroached on the proposed single-family home to be built on the flag lot parcel. []

b. by ignoring or overlooking that the [Zoning Board] grant of zoning relief was not, and is still not final and, therefore, not based upon substantial evidence[.]

c. by disregarding the impact of the harm forecasted on the Record by [Objectors] if the residential structure is constructed, even if not within the floodplain area of the flag lot parcel, but without adequate and effective stormwater management controls, in derogation of *Kowalski v. TOA PA V, L.P.*, 206 A.3d 1148 (Pa. Super. 2019)[.]

d. by determining, notwithstanding the foregoing, that "evidence was sufficient such that a reasonable mind would accept it as supporting the [Zoning Board's] conclusion." []

e. by failing to uphold protection of onsite natural resources under the Pennsylvania Constitution and the corresponding protection of [Objectors'] property adjoining [Intervenors'] flag lot and flag pole parcel at issue? []

4. Did the [three]-member majority of the [Zoning Board] commit an error of law and an abuse of discretion, denying [Objectors] their due process and a reasonable opportunity to be further heard, by improperly delegating their decision-making responsibility to the Township Engineer to evaluate post-[Zoning Board] Hearing evidence of proof,[] via a floodplain site survey to be conducted unilaterally by [Landowners] after the [Zoning Board] record was closed on December 21, 2021, to be conducted by [Intervenors], to address the "crux" issues and to establish "once and for all"[:]

(a) Whether the location of [Landowners'] proposed residential structure is within the floodplain,[] as prohibited by [Zoning] Ordinance; and

12

(b) Whether [Landowners'] proposed design of a storm water management system on their subject flag lot shall account for and handle a 100-year storm.[]

These are the primary issues raised by [Objectors] in opposition to the original [Landowners'] Application, as supported by the testimony and exhibits of Objectors' expert engineer/surveyor witness . . . who the [Zoning Board] declared credible?

5. Did the [Zoning Bord] majority further abdicate their statutory responsibility by not requiring [Landowners], now [Intervenors], to present substantial evidence, on the [Zoning Board] Record, to support the [Zoning Board's] grant of variance relief, yet allowing for the potential of a residential structure to be constructed within the floodplain on a flag lot 100% restricted by natural resources, as evidenced by admissions in [Landowners'], now [Intervenors'], Application and hearing exhibits that the flag lot adjoining [Objectors'] residential property is devoid of a building envelope?

Objectors Brief at 5-10 (citations and footnote omitted).

[10] Pennsylvania Rule of Appellate Procedure 2119(a) requires that the brief's argument "be divided into as many parts as there are questions to be argued[.]" Pa.R.A.P. 2119(a). Objectors' brief raises five main issues, but the argument section of their brief is not divided into any distinct issues. Issues raised in the statement of questions but not addressed within the argument section of the brief are deemed waived. *Borough of Ulysses v. Mesler*, 986 A.2d 224, 227 (Pa. Cmwlth. 2009). Accordingly, Objectors' arguments regarding PA. CONST. art. I, §27; public and private nuisance; continuing trespass; and a hearing on compliance with condition five are waived.

Further, Pa.R.A.P. 2119(a), (c)-(d) requires that the issues in a brief be supported with pertinent discussion, with references to legal authorities. Issue spotting without analysis or legal citation to support an assertion precludes appellate review. *Commonwealth v. Spontarelli*, 791 A.2d 1254, 1259 n.11 (Pa. Cmwlth. 2002). The argument section of Objectors' brief is composed of conclusory statements lacking legal analysis. All issues are waived, except those related to the variances being conditioned on a floodplain survey and meeting certain criteria for the design of their stormwater management system.

[11] Intervenors filed an application to strike Objectors' brief and reproduced record on the basis they contain extra-record evidence. Specifically, Intervenors claim that copies of the Zoning Board's minutes for June 15, 2021; August 3, 2021; August 17, 2021; August 31, 2021; November 30, 2021; and December 21, 2021, are in the reproduced record but are not part of the original record. It is well settled that this Court may not consider evidence that is not part of the certified record on appeal. *See Westfall v. Department of Transportation, Bureau of Driver Licensing*, 558 A.2d 619, 621 n.4 (Pa. Cmwlth. 1989). *See also* Pa.R.A.P. 1921. With the exception of the December 21, 2021, minutes, which are in the original record, we cannot consider the other meeting minutes and disregard any references to those meeting minutes in Objectors' brief. Accordingly, we grant Intervenors' application to the extent it seeks to strike the June 15, 2021; August 3, 2021; August

**Standard of Review and Applicable Legal Principles**

Where, as here, the trial court did not take additional evidence, our review of the Zoning Board's decision determines whether it erred or abused its discretion in granting the variances with conditions. *Township of Exeter v. Zoning Hearing Board of Exeter Township*, 962 A.2d 653, 659 (Pa. 2009). The Zoning Board's findings of fact must be supported by substantial evidence, *i.e.*, that relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached. *Id*. (quotation omitted). The Zoning Board is "the sole judge of the credibility of witnesses and the weight afforded their testimony." *Pohlig Builders, LLC v. Zoning Hearing Board of Schuylkill Township*, 25 A.3d 1260, 1266 (Pa. Cmwlth. 2011). The Court "must view the evidence in a light most favorable to the prevailing party, which must be given the benefit of all reasonable inferences arising from the evidence." *Lawrenceville Stakeholders v. City of Pittsburgh Zoning Board of Adjustment*, 247 A.3d 465, 473 (Pa. Cmwlth. 2021).

The Zoning Board determines whether the evidence satisfies the criteria for granting a variance. The Zoning Ordinance authorizes the Zoning Board to impose reasonable conditions on a variance request. It states:

> In granting any variance the Board may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of this chapter.

ZONING ORDINANCE, §200-97(B). This Court has explained:

> The conditions imposed must bear a reasonable relation to the protection of the public interest, *see VanSciver v. Zoning Board of Adjustment*, [] 152 A.2d 717 ([Pa.] 1959), and be reasonable under the facts of the case, *see Fifty-fourth Street Center, Inc. v. Zoning Board of Adjustment*, [] 150 A.2d 335 ([Pa.] 1959).

---

17, 2021; August 31, 2021; and November 30, 2021, meeting minutes and any references thereto. In all other respects, the application is denied.

14

This is an extension of the Board's power to deny a variance where, though a hardship has been established, it has not been shown to the Board's satisfaction that the proposed use would not be adverse to the public interest. "Since a zoning board has power to deny an application where the evidence shows that it would be contrary to the public interest, it necessarily possesses the lesser power to impose restrictions on the permit designed to eliminate its objectionable features."  R. Ryan, Pennsylvania Zoning [§]9.4.18 (1970).  *See Fifty-fourth Street Center, Inc.*[, 150 A.2d 335].  This suggests that, in order to impose conditions, there must be a determination that the application, if granted, would be detrimental to the public interest. *See* R. Ryan, supra [§]9.4.18.

*Appeal of Board of Supervisors of Solebury Township, Bucks County*, 412 A.2d 163, 165 (Pa. Cmwlth. 1980).

## I.  Floodplain Site Survey

Objectors argue that the Zoning Board erred and abused its discretion by conditioning the variances on a floodplain site survey to be reviewed and approved by the Township.  They contend that the Zoning Board had to determine the location of the floodplain before granting Landowners' requested variances. Further, Intervenors have not "in 'due time' complied" with the condition to obtain a floodplain site survey.  Objectors Brief at 19.  Objectors urge this Court to remand the matter to the trial court, pointing out that one Zoning Board member stated "that he would reverse his vote if the result of the post-hearing floodplain survey confirmed" that the location of Landowners' house is in the floodplain.  *Id*. at 20. Objectors' expert testified that Landowners' proposed house lies in the floodplain.

Intervenors respond that the Zoning Board properly conditioned the variances on the performance of a floodplain survey.[12]  The MPC permits a variance to include "such reasonable conditions and safeguards as it may deem necessary to

---

[12] Landowners and the Township join in the brief filed by Intervenors.

implement the purposes of this act and the zoning ordinance." Section 910.2 of the MPC, 53 P.S. §10910.2. The parties' experts reached different opinions on whether Landowners' proposed house was located within the floodplain, and the Zoning Board found both experts credible. Accordingly, it imposed the condition that Landowners undertake additional elevations by a licensed surveyor in order to "fine tune the exact location of the floodplain[.]" Intervenors Brief at 24 (quoting Zoning Board Decision, Conclusion No. 46).

Objectors do not challenge any of the Zoning Board's findings of fact; thus, "[t]hey are binding on this Court." *Frederick v. Allegheny Township Zoning Hearing Board*, 196 A.3d 677, 688 (Pa. Cmwlth. 2018). Objectors argue that the Zoning Board "improperly delegate[ed its] decision-making responsibility" to the Township by requiring a floodplain survey that will demonstrate that Landowners' residence is not on the floodplain. Objectors Brief at 8. They contend that this was a decision to be made by the Zoning Board, not the Township.

Objectors cite no authority to support this argument. The Zoning Ordinance states:

> Boundary disputes. Should a *dispute concerning any identified floodplain boundary arise, an initial determination shall be made by Lower Makefield Township* and any party aggrieved by this decision or determination may appeal to the Zoning Hearing Board. The burden of proof shall be on the appellant.

ZONING ORDINANCE, §200-55.D (emphasis added). In short, the Township, not the Zoning Board, determines floodplain boundaries. If a party disagrees with that determination, then an appeal to the Zoning Board may be filed. The Zoning Board's condition comports with the Zoning Ordinance.

Moreover, Landowners did not seek a variance to build in the floodplain, and the variances sought by Landowners did not require a determination

16

of the boundary of the floodplain. It was not necessary for the Zoning Board to resolve the floodplain location dispute in order to grant the requested variances. *See generally Hostetter v. South Londonderry Township Zoning Hearing Board* (Pa. Cmwlth., No. 66 C.D. 2023, filed January 23, 2025) (unreported).[13] Even so, failure to satisfy the floodplain condition will render the variances ineffective, as Objectors acknowledge. Objectors Brief at 17.

Finally, Objectors urge this Court to remand this matter to the trial court for the stated reason that Intervenors have not yet conducted a site survey to determine the location of the floodplain. Objectors did not raise this issue before the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Insofar as Objectors raised this issue in their Pa.R.A.P. 1925(b) concise statement, our Supreme Court has explained:

> [I]n general, a Rule 1925(b) [S]tatement cannot resurrect an otherwise untimely claim or objection. *See Commonwealth v. DeLoach*, 714 A.2d 483, 486 n.8 (Pa. [Cmwlth.] 1998) (holding that issues not raised at trial cannot be raised in a [Rule] 1925(b) [S]tatement); *Rutledge v. Dep[artment] of Trans[portation]*, . . . 508 A.2d 1306, 1306-07 ([Pa.] 1986) (same). Because issues not

---

[13] In *Hostetter*, the landowners sought a variance from the front yard setback requirement in the zoning ordinance to construct a garage. At the hearing, the landowners explained that the location of their home on the property created a narrowness issue, affecting the proposed location of the garage due to limited side yard areas. The garage could not be placed on the west side of the property because of an existing natural swale in that location. The zoning board granted the landowners' application for the variance. The zoning ordinance provided that the zoning board "may grant a variance provided all the following findings are made where relevant: . . . 6. The variances shall require compliance with the Township Floodplain Management Ordinance." *Hostetter*, slip op. at 5 (quotation omitted). This Court noted that the zoning board's decision did not "discuss floodplain management, presumably because it is not relevant to [the l]andowners' variance request." *Id.*, n.3.

Pursuant to Commonwealth Court Internal Operating Procedure §414(a), 210 Pa. Code §69.414(a), an unreported opinion of this Court may be cited for its persuasive value and not as binding precedent.

> raised in the lower court are waived and cannot be raised for the first time on appeal, a [Rule] 1925(b) [S]tatement can therefore never be used to raise a claim in the first instance. Pa.R.A.P. 302.[] Pennsylvania law is clear that claims and objections that are not timely made are waived. *See Takes v. Metropolitan Edison Co*[*mpany*], . . . 695 A.2d 397, 401 ([Pa.] 1997) (applying the rule of waiver in the context of trial objections).

*Steiner v. Markel*, 968 A.2d 1253, 1257 (Pa. 2009) (footnote omitted). Accordingly, this issue is waived.

A zoning hearing board does function as the municipality's zoning code enforcement officer. *See In re Leopardi*, 532 A.2d 311, 313 (Pa. 1987) (noting that "[t]he power to issue enforcement or remedial orders is not expressly conferred upon zoning hearing boards [under the MPC], and neither remedial nor enforcement powers are implied in the powers that are delegated"). The Zoning Ordinance provides that its enforcement requires action by the Township. *See* ZONING ORDINANCE, §§200-116 - 200-117. In any case, the Township cannot issue a building permit to Landowners until the variance conditions are satisfied. We decline Objectors' invitation to remand this matter to the trial court to address Intervenors' compliance with the floodplain survey condition.

To ensure that Landowners' house will be located outside the floodplain, the Zoning Board conditioned the variances on the performance of a site survey, which was reasonable. The Zoning Board, itself, did not need to determine the floodplain boundary location to grant the variances. It is the Township, not the Zoning Board, that makes this initial determination. Accordingly, the Zoning Board did not err or abuse its discretion by imposing a condition requiring Landowners to do a floodplain survey.

## II. Stormwater Management Design

Next, Objectors argue that the Zoning Board "improperly delegate[ed] its] decision-making responsibility" to the Township engineer to determine whether Landowners' stormwater management design is capable of handling a 100-year storm. Objectors Brief at 8. They contend that the Zoning Board was required to make this decision and that the controls proposed by Landowners are not adequate to protect Objectors' property. Had Landowners met their burden of proof, then it would have been unnecessary for the Zoning Board to impose the condition that Landowners' stormwater management system "account for and handle the 100-year storm subject to the review and approval of the Township Engineer." Zoning Board Decision at 26, Order.

Intervenors respond that Landowners introduced numerous plans, calculations and analyses to address stormwater, which satisfied Landowners' burden of proof. Nevertheless, the Zoning Board imposed a condition to require their stormwater management system be approved by the Township Engineer as able to handle a 100-year storm.

The Township's Ordinance specifically states that "[a]ll inspections regarding compliance with the stormwater management (SWM) site plan and this chapter shall be the responsibility of the municipality." DELAWARE RIVER SOUTH WATERSHED STORMWATER MANAGEMENT ORDINANCE, §173-38. Thus, Objectors' argument that the Zoning Board had to make this determination lacks merit.

Objectors next argue that their evidence deserved greater weight than that presented by Landowners. "This Court may not substitute its interpretation of the evidence for that of the [Zoning Board]." *Tidd v. Lower Saucon Township Zoning Hearing Board*, 118 A.3d 1, 13 (Pa. Cmwlth. 2015). "Determinations as to the

credibility of witnesses and the weight to be given to the evidence are matters left solely to the [Zoning] Board in the performance of its factfinding role." *Shamah v. Hellam Township Zoning Hearing Board*, 648 A.2d 1299, 1304 (Pa. Cmwlth. 1994). The Zoning Board, not this Court, determines the weight to assign expert testimony.

The Zoning Board required Landowners to ensure their "system can handle all storms not just the common storms with less water." Zoning Board Decision, Conclusion No. 49. The condition is consistent with its authority to safeguard the public's health, safety and welfare, and it is supported by the record evidence.

Objectors rely on *Kowalski*, 206 A.3d 1148, for the proposition that "a property owner who proposes to alter the natural condition of his, her, or their, property" bears the burden "to not cause the volume or velocity of surface water . . . to even slightly encroach upon a downstream property." Objectors Brief at 22 (emphasis original). In *Kowalski*, a plaintiff brought a civil action for, among other things, a continuing trespass of flooding of the plaintiff's property caused by a condominium development and detention pond located uphill. 206 A.3d at 1153-54. The Superior Court determined that the condominium development caused "temporary flooding" of the plaintiff's property after heavy rains, which constituted a continuing trespass. *Id*. at 1163. This trespass case has no relevance to Objectors' land use appeal.

Because the parties disputed whether Landowners' stormwater management proposal will be able to handle the 100-year storm, the Zoning Board reasonably imposed a condition to ensure that Landowners' system can handle all storms, from common storms to a 100-year storm event. The Zoning Board did not

err or abuse its discretion in requiring Landowners to have their stormwater management system reviewed and approved by the Township Engineer.

## Conclusion

For the above-stated reasons, the Zoning Board did not err or abuse its discretion in conditioning the grant of the variances on Landowners performing a floodplain survey and on meeting specified criteria for their stormwater management design. Accordingly, we affirm the trial court's order.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Covey did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Scott E. and    :
Kathryn A. MacDonald from the   :
February 1, 2022 Decision and Order :
of the Zoning Hearing Board of   :
Lower Makefield, PA          :
Re: Tax Map Parcels #20-039-004-001 :
& 20-039-004-002          :
                            :
Appeal of: Scott E. MacDonald and  :  No. 1195 C.D. 2022
Kathryn A. MacDonald       :

# **O R D E R**

AND NOW, this 7th day of April, 2026, the order of the Bucks County Court of Common Pleas, dated October 4, 2022, is AFFIRMED.

The "Application to Strike Appellants' Reproduced Record and Brief" filed by Troy Bausinger and Amy Bausinger on August 18, 2023, is GRANTED, in part, and DENIED, in part, and the minutes of the Lower Makefield Township Zoning Hearing Board's meetings on June 15, 2021, August 3, 2021, August 17, 2021, August 31, 2021, and November 30, 2021, which are attached to Scott E. MacDonald and Kathryn A. MacDonald's brief, and any references thereto in the brief, are hereby STRICKEN.

_____
MARY HANNAH LEAVITT, President Judge Emerita